Miller v. Leeper.

MILLER v. LEEPER,* *Public Administrator, et al.,*
*Appellants.*

Division Two, February 27, 1894.

1. **Fraudulent Conveyance:** TAX SALE: PURCHASE BY LAND-OWNER'S WIFE. Land of an insolvent worth $2,000 was sold at a tax sale and bid in by his wife at a tenth of its value, she obtaining the purchase money by giving her note which she secured by giving a deed of trust on the property, in the execution of which her husband joined. *Held,* that the transaction was a fraud on the husband's creditors.

2. ———: ———: ———. Nor would the fact that the beneficiary in the deed of trust voluntarily released to the wife a part of the debt change the situation.

3. **Homestead:** LAW OF 1875: FRAUDULENT CONVEYANCE. Since the homestead law of 1875 (R. S. 1889, sec. 5439) only secures to the widow and children an estate in the land limited by the widow's life and the attainment of majority by the youngest child, there may be a fraudulent conveyance of the homestead by the party entitled thereto so far as concerns the fee after the expiration of the limited estate.

*Appeal from Lewis Circuit Court.*—HON. B. E. TURNER,
Judge.

AFFIRMED.

This proceeding, in the nature of a creditor's bill, was instituted in the Lewis circuit court on the twenty-ninth of July, 1890, having for its object the setting aside of a certain deed executed on the sixteenth day of September, 1880, to Dorothy, wife of Zebulon T. Knight, which deed conveyed to Dorothy lots 1, 2 and 3, in block 2, in Green & Hawkins' addition to the town of Canton, for the sum of $250, the amount bid by her at a sale of those lots for taxes of previous

* *Lewis v. Leeper* was affirmed upon the authority of this case, February 27, 1894.

years, a judgment for such taxes having been recovered for the enforcement of the state's lien against said lots, in the previous March, in the sum of $361.87, which judgment had for parties defendant both Zebulon T. Knight and wife, though he alone owned the property.

In 1877 Zebulon T. Knight was the owner of twenty-four feet off the west end of lots 6 and 7 in block 5 in the town of Canton. He also owned said lots 1, 2 and 3 in block 2 in said addition to the town. In the year first mentioned he conveyed to Rollins the twenty-four foot strip in block 5, to secure a debt of $1,165 due to Nathaniel J. Knight which it seems was as much as the property was worth. Aside from the lots mentioned, Zebulon T. Knight owned no other property.

In June, 1878, plaintiff and Joseph A. Miller as partners recovered judgment against said Zebulon T. Knight before a justice of the peace for $94.73 and costs. In the same month they filed a transcript of this judgment in the office of the clerk of the circuit court of the county. In September, 1878, one Aaron D. Lewis recovered judgment against Zebulon T. Knight in the Lewis circuit court in the sum of $135.80. In March, 1879, Alfred Bass recovered judgment against said Knight in the circuit court of the United States, eastern district of Missouri, in the sum of $4,778.57.

In order to procure money to pay her bid at the tax sale, and thus obtain a conveyance to herself of lots 1, 2 and 3, Dorothy executed her own promissory note for the sum of $368.07, and to secure this note she joined with her husband in executing a deed of trust on said lots (her husband's own property) to one O. C. Clay as trustee of Emeline Tate. With the money thus procured by an incumbrance created on the property of her husband, Dorothy bought her husband's property, the lots, paid her bid for the same and costs

of suit, and taxes on a small piece of property she held in town in her own right. The property of her husband thus bought by her was worth at the time of its purchase some $1,500 or $2,000.

The evidence strongly tends to show that Zebulon T. Knight was insolvent in 1878, and from that time on. In that year he admitted to a witness well acquainted with him that he was unable to meet his obligations. The property in question was that on which Zebulon T. Knight lived with his family. In June, 1881, he died, and his estate being ordered into the charge of defendant Leeper, public administrator, the partners Miller had their judgment recovered before the justice of the peace classified in the fourth class of claims in the probate court. The evidence shows also that no assets belonging to the estate of the decedent ever came into the hands of the public administrator; that over a $1,000 indebtedness was proved against his estate, besides a large amount of outstanding indebtedness not so proven. After the classification of the judgment aforesaid, Joseph A. Miller transferred his interest in that judgment to plaintiff.

Emeline Tate died in 1881; she left a legacy of $200 to Dorothy Knight, and in April of that year the latter directed that legacy to be credited on her note, which was done. After that a claim for $35 was proved against the estate of Emeline Tate by Dorothy Knight, and was credited on the note. After that the note with its unpaid balance passed to one Mrs. Munday as residuary legatee, and was discharged by Dorothy Knight executing a deed to Mrs. Munday for the strip of land, twenty-four feet in width, on which was a small building that rented for $7 per month; and was all the property she had when she made the purchase of her husband's property in 1880. This was in 1885.

When Dorothy Knight died does not appear; but

it seems that on her death the public administrator took charge of the property as that of said Dorothy, who rented it to defendant, Samuel Z. Knight at $5 per month until January 1, 1890, when defendant got possession. Dorothy left three sons surviving her, defendant Samuel Z. and his brothers Cyrus W. and George P. The other brothers conveyed their interests in the lots to defendant Samuel Z. The deed of George P. recites a consideration of $750, dated September 16, 1889, and filed for record the twenty-first of that month. When the other deed from Cyrus P. to his brother was made, does not appear. The notice of equitable lien in this case was filed August 20, 1890. It does not appear from the evidence that any consideration was paid for said conveyances between the said brothers, nor was defendant able to state whether he made improvements on the premises *before* the equitable notice was filed or *subsequent* thereto.

At the close of the testimony, which embraced all the judgments aforesaid rendered, and testimony of the entire lack of assets in the hands of the public administrator, etc., the circuit court entered the following decree:

"Augustus J. Miller, Plaintiff,

      *v.*

John H. Leeper, Public Administrator of Lewis County, Missouri, having in charge the estate of Zebulon T. Knight, deceased, and Samuel Z. Knight, Defendants.

"Now at this seventeenth day of September, 1891, this cause coming on to be heard, and the said John H. Leeper having been duly summoned comes not but makes default. It is therefore considered that judgment by default and final be rendered against him. Whereupon this cause is submitted to the court on the

petition of plaintiff, the answer of the defendant Samuel Z. Knight and the replication thereto, and the proofs taken therein having been argued by counsel for the respective parties and the court having duly considered the same doth find that on the fifth day of June, 1878, Augustus J. Miller and Joseph A. Miller recovered against Zebulon T. Knight in the court of one John James, then a justice of the peace for Canton township, Lewis county, Missouri, for the sum of $94.73, and the further sum of $3.20 for their costs; that on the tenth day of June, 1878, at 12 o'clock M. the said Augustus and Joe A. Miller caused a transcript of said judgment to be placed in the office of the clerk of the Lewis county circuit court, which said judgment bears interest at the rate of ten per cent. per annum; that on the twenty-ninth day of June, 1881, the said Zebulon T. Knight departed this life intestate, leaving as his widow one Dorothy Knight and his heirs at law, defendants Samuel Z. Knight, George P. Knight and Cyrus W. Knight; that the defendant John H. Leeper was then and still is public administrator of said Lewis county and did under the direction and order of the probate court of said county take into his possession and charge the estate of said Zebulon T. Knight on the nineteenth day of August, 1891, and said August J. and Joseph A. Miller exhibited a copy of said judgment of said circuit court to the probate court of said county for allowance and classification and that said judgment was on said last mentioned day allowed in the sum of $135.95 against the estate of said Zebulon T. Knight, allowed and classified as of the fourth class of demands; that on the third day of July, 1890, the said Joseph A. Miller assigned and delivered to plaintiff all his right, title and interest in and to said judgment; that plaintiff is now the sole and only owner thereof; that no part of said judgment has been paid but is still

due plaintiff; that the estate of the said Zebulon T. Knight is now and always has been insolvent, nor has the defendant John H. Leeper now or has he ever had in his hands any assets belonging to said estate wherewith to pay said judgment or any part thereof; that at and prior to the time of contracting of the debt to said Augustus J. and Joe A. Miller, upon which the aforesaid judgment was rendered, and at the time of the rendition against said Zebulon in their favor, the said Zebulon was the owner in fce of the following described real estate, to wit: Lots numbers 1, 2 and 3 in block 2 of Green & Hawkins' addition to the town of Canton in the county of Lewis and the state of Missouri.

"That said Zebulon T. Knight in his lifetime failing to pay the taxes hereon due the state, county, and town of Canton on the twentieth day of January, 1879, the state of Missouri, at the relation of William H. Graves, the then collector of the revenue of said county of Lewis, commenced an action against the said Zebulon T. Knight, for the recovery of said taxes, in the Lewis county circuit court, praying that the lien of the state be enforced against said real estate and that the same, or so much thereof as might be necessary, be sold to satisfy said judgment, interest and costs; that on the tenth day of March, 1879, an amended petition was filed in said cause making said Dorothy Knight, the then wife of said Zebulon, a party defendant thereto, and the court finds that said Dorothy Knight had no interest in the real estate aforesaid other than the wife of said Zebulon; that on the sixteenth day of March, 1880, the said state of Missouri, at the relation and to the use of said Graves, recovered a judgment against the said Zebulon and Dorothy Knight for the sum of $361.87, taxes, interest, penalties and costs, and the court decreed that the lien of the state be enforced, and the said real estate aforesaid,

'or so much thereof as might be necessary be sold to satisfy said judgment, interest and costs, and that a special *fieri facias* issue theron; that on the sixteenth day of August, 1880, a special *fieri facias* was issued on said judgment from the office of the Lewis county circuit court, directed to William S. Richardson, sheriff of said county, and placed in his hands, and was by him levied upon said real estate; that afterwards, to wit, on the sixteenth day of September, 1880, the said sheriff, under said *fieri facias*, sold said lots, before the courthouse door, in the town of Monticello, in said county, during the session of the Lewis county circuit court; that said Zebulon T. Knight was then living; that the said Dorothy Knight, the then wife of the said Zebulon, became the purchaser of said lots 1, 2 and 3 of block 2, aforesaid, at and for the sum of $250; that on the eighteenth day of September, 1880, the said sheriff of said county, William S. Richardson, executed and delivered to said Dorothy a deed therefor; that said real estate, at the time of the purchase thereof by said Dorothy, was worth the sum of $2,000; that the said Zebulon T. Knight, at the time of the recovery of the aforesaid judgment by plaintiff against him, on the fifth day of June, 1878, as aforesaid, was in failing circumstances and so continued to be at the date of the purchase of the aforesaid real estate by the said Dorothy, and at his death was insolvent; that since the purchase of the real estate as aforesaid by said Dorothy Knight, she has departed this life, leaving as her sole and only heirs at law the defendant, Samuel Z. Knight, George P. and Cyrus W. Knight; that since her death the said Cyrus and George P. have conveyed all their title and interest in the real estate aforesaid to defendant Samuel Z. Knight; that said Dorothy Knight, at the time she

purchased the real estate aforesaid and received the deed therefor from said sheriff, was the wife of the said Zebulon T. Knight; that she purchased said real estate and paid therefor with the money and means of said Zebulon, and took the deed therefor in her own name, with the knowledge and consent of the said Zebulon T. Knight with the intent and purpose on the part of both the said Zebulon and Dorothy to hinder, delay and defraud the plaintiff and other creditors of said Zebulon, and that the said deed, so executed to her by said sheriff on the said eighteenth day of September, 1880, is fraudulent and void as to plaintiff and other creditors of said Zebulon.

"And the court further finds that there is now due and owing plaintiff the sum of $265; that he is entitled to ten per cent. interest thereon from this date, and that defendant should take nothing by virtue of his plea of homestead and claim for improvements.

"Wherefore, it is ordered, adjudged and decreed that the sheriff's deed, so executed and delivered to said Dorothy Knight by the said sheriff, on the eighteenth day of September, 1880, and the deeds so executed and delivered by the said Cyrus and George P. Knight to defendant Samuel Z. Knight, be set aside and for naught held as against the plaintiff and other creditors of the said Zebulon T. Knight. And the court doth further order, adjudge and decree that said real estate aforesaid, or so much thereof as may be necessary, be sold and the proceeds applied to the payment of plaintiff's demand with the interest that may accrue thereon up to the date of sale, together with the costs of this suit."

From this decree defendants have appealed to this court. Other matters, when necessary, will be adverted to hereafter.

*Blair & Marchand* and *Clay & Ray* for appellants.

(1) The findings of the court are against the evidence; the weight of the evidence; against the law; against the law and the evidence; not supported by either or all. The plaintiff's evidence shows the property in controversy at the date of plaintiff's judgment, June 5, 1878, against Z. T. Knight, to be worth $2,000. Plaintiff's evidence shows that said property was worth in September, 1880, during the lien of plaintiff's said judgment from $2,000 to $3,000. The evidence shows that plaintiff had an adequate remedy at law, and failed to exhaust it. If he has lost it, it is because of his own laches. In such cases equity will grant no relief. His claim is stale. 1 Story's Eq. Jur. [13 Ed.], secs. 31–61; *Merry v. Freeman*, 44 Mo. 319; *Alnutt v. Leper*, 48 Mo. 319; *Thias v. Seiner*, 103 Mo. 314; *Lunderman v. Bank*, 63 Mo. 48; *Woolfolk v. Kemper*, 31 P. 421; *Railroad v. Futer*, 100 Am. Dec. 546; *Frost v. Wolf*, 19 Am. St. Rep. 761; *Humphreys v. Co.*, 98 Mo. 542; *Burgess v. Railroad*, 99 Mo. 496; *Bliss v. Prichard*, 67 Mo. 181; *Bell v. Hudson*, 2 Am. State Rep. 791; *Murphy v. DeFrance*, 105 Mo. 53. (2) The insolvency of Dr. Knight, at his death or before, was not proved; the plaintiff under the pleadings and issues had to prove that fact; this he could not prove by general reputation. The claims proved against his estate was the only legal evidence of his insolvency; they only amounted to $1,029.34. Certainly this does not prove his insolvency, so far as plaintiff was concerned. He having a judgment for $94.73 and a lien upon the lots worth from $2,000 to $3,000 which, had he used due diligence, been guilty of no laches, he could have collected. Abbott's Trial Evidence, 617. (3) The evidence shows no intentional fraud upon the part of Dorothy Knight, or Dr. Knight. There is no evidence showing that Dr. Knight

knew that the lots were going to be sold or that his wife intended buying the lots. The *onus* is upon the plaintiff to show that Mrs. Knight bought the lots with the money of Dr. Knight. *White v. Clasby*, 101 Mo. 167. That the wife has the right to buy her husband's property with her own money, and the right to borrow money of friends and relatives, and give her note therefor, to pay for such property, there can be no question. *Page v. Dixon*, 59 Mo. 43; *Botts v. Gooch*, 97 Mo. 88; *White v. Clasby*, 101 Mo. 162; *Buck v. Moore*, 36 Mo. App. 529; *McFarren v. Kinney*, 22 Mo. App. 554; *Cook v. Tull*, 20 S. W. Rep. (Mo.) 8; *Seitz v. Mitchell*, 94 U. S. 580; *McLaran v. Mead*, 48 Mo. 115.

*John C. Anderson* and *George Ellison* for respondent.

(1) Respondent maintains that Dorothy Knight, the wife of Dr. Knight, by her purchase of the lots in controversy, at the tax sale made by the sheriff on the sixteenth day of September, 1880, did not and could not acquire an interest in said lots adverse to the interest of her husband, and while it may be conceded that the legal title passed to her by virtue of said sheriff's deed, she held it in trust for her husband and her husband's creditors. Black on Tax Titles, sec. 143; *Robinson v. Lewis*, 68 Miss. 69; *Laton v. Balton*, 54 N. H. 92. (2) Upon the same principle a husband can not purchase and hold adversely his wife's property, and one tenant in common can not purchase and hold adversely to his cotenants; his purchase inures to the benefit of all the cotenants. *Hickman v. Link*, 97 Mo. 482; *Sweishlem's Appeal*, Penn. St. 475; 1 Blackwell on Tax Titles [5 Ed.], sec. 572. (3) The evidence shows that at and before the tax sale Dr. Knight was insolvent, and the uncontradicted fact in this case is, that the money with which Mrs. Knight paid her bid at the

tax sale was obtained by executing a deed on the property sold, her husband's property, and no other; this too, two days after the sale, to wit, on the eighteenth of September, the sheriff kindly holding his deed and not acknowledging it till that day. The money thus raised was to all intents and purposes the money of her husband, and if so, she took title in trust for him and his creditors. *Jordon v. Buschmeyer*, 97 Mo. 94. (4) In the absence of evidence that property bought by a woman during coverture was bought with her separate means, the presumption of law is, that it was paid for by the means of the husband. *Sloan v. Torry*, 78 Mo. 623; *Seitz v. Mitchell*, 94 U. S. 580; *White v. Clasby*, 101 Mo. 167. (5) On the evidence in this case there was not only constructive, but actual fraud in the transaction by which Dorothy Knight acquired title to the lots in controversy, and the court below so found, and if there be evidence supporting the finding, this court will not interfere. *Judy v. Bank*, 81 Mo. 404; *Erskine v. Lœwenstein*, 82 Mo. 301; *Rawlins v. Rawlins*, 102 Mo. 563. (6) That a creditor may maintain a proceeding in equity to set aside fraudulent conveyance in a case of this character is well established. *George v. Williamson*, 26 Mo. 190; *Merry v. Freeman*, 44 Mo. 518; *Jackman v. Robinson*, 64 Mo. 289; *Zallow v. Loper*, 75 Mo. 460. (7) The court committed no error in striking out that portion of defendant's answer setting up the statute of five years' limitation. The ten years' statute of limitation alone could be invoked in this action. *Hunter v. Hunter*, 50 Mo. 445; *Thomas v. Mathews*, 51 Mo. 107; *Rogers v. Brown*, 61 Mo. 187; *Sherwood v. Baker*, 105 Mo. 472.

SHERWOOD, J.—The evidence in this case is sufficient to justify the decree rendered, and no reason is disclosed why the conclusions reached by the lower

court are not correct; there was certainly ample evidence from which those conclusions could be drawn, and, besides, the trial court had the witnesses before it, and could for that reason more fairly judge of their credibility than can we; indeed it may be said that on the principal ground, on which the decree rests, there is no dispute as to the testimony, to wit: the great financial embarrassment, if not the actual insolvency, of Zebulon T. Knight at the time the purchase of his title in this litigated property at the tax sale occurred; that such property was worth some $2,000, and yet was bid in by his wife at a little over ten per cent. of its value, who obtained the purchase money to buy it in, by giving her *own note*, and then securing that note *by creating an incumbrance on that very property, her husband assisting her to do so, by joining her in the execution of the deed of trust!* Facts so pronounced as these, so salient in their characteristics of a design to defraud creditors, can not be hidden or concealed behind such a commonplace and hackneyed subterfuge. These facts speak for themselves.

Nor is the situation altered by the fact that subsequently, Emeline Tate by her legacy of $200 forgave Dorothy Knight a portion of the debt. The effect of this was just the same and no greater than if Dorothy Knight after executing that note and receiving the money therefor, had *found* $200, in the street, and had applied such windfall in part discharge of the note; for the fact would still remain that she obtained the $250, which bought in the property, *out of the property itself*, and not otherwise or elsewhere. The legal effect of obtaining the $250 by such means is to all intents and purposes, precisely the same as if Zebulon T. Knight, the husband, had taken it out of his pocket or had executed his individual promissory note, secured by a deed of trust on his own property, and then handed

the proceeds of that note to his wife to buy in the *same* property at a tax sale! If the sole purpose was to save the land from being sold for taxes, the husband could have raised the money by making an incumbrance on the land himself, as well as by joining his wife in the deed of trust; but in *that* case, there would have been *no apparent transfer of title to the wife.* Enough of this.

In regard to the alleged homestead rights of defendant Samuel Z. Knight, it suffices to say that the homestead law of 1875 applies here; that the mother being *dead*, we shall assume that said defendant was not *a minor* when the court entered its decree against him, as he was present and testified in court as a witness; we will not convict the lower court of error on mere surmise or conjecture. Furthermore, since that act went into operation, the widow and children only take a limited estate and not a fee as formerly, so that there may be a fraudulent conveyance now of a homestead by the party entitled thereto, so far as concerns the fee after the expiration of the limited estate. *Schaeffer v. Beldsmeier*, 107 Mo. 314.

Nor do we see any reason to complain of plaintiff's *laches* in this matter; surely his failing to resort to his equitable proceeding has not resulted in working any detriment to defendant Samuel Z., nor does it appear that it has induced him to change his condition to his hurt in consequence of plaintiff's failing to act sooner. Besides, plaintiff's right in this instance is clear; the testimony shows the precise nature of the transactions which preceded and attended the tax sale, and therefore the lapse of time has not prejudiced the interest of defendants, or caused their case to appear differently than it would have appeared had equitable relief been invoked at an earlier date, by plaintiff. And certainly plaintiff's claim is not barred by the statute; for only

about nine years had elapsed from the time his judgment was classified in the probate court before this proceeding was instituted.

For these reasons, believing it to be correct, we affirm the decree of the lower court.   All concur.