CITIZENS BANK OF PLEASANT HILL, a Corporation, Appellant, v. M. R. ROBINSON ET AL.

CITIZENS BANK OF PLEASANT HILL, a Corporation, v. M. R. ROBINSON ET AL., Appellants.—117 S. W. (2d) 263.

Division One, May 26, 1938.*

*NOTE: Opinion filed at September Term, 1937, December 17, 1937; motion for rehearing filed; motion overruled April 1, 1938; motion for rehearing on modified opinion filed; motion overruled at May Term, 1938, May 26, 1938.

*Wilson, Bundschu & Bailey* for Citizens Bank of Pleasant Hill.

*Burrus & Burrus* and *Johnson, Garnett & Quinn* for Robinson and others.

HYDE, C.—This case, recently reassigned to the writer, is an action in equity to set aside certain conveyances of land in Jackson County. These conveyances were alleged to have been made to hinder, delay, and defraud the creditors of Mark Robinson and his two sons, Everett and John Robinson. Defendants, who claim title or rights under these conveyances, filed cross bills seeking to have their validity established. The court entered a decree which decided the issues (as hereinafter detailed) in a way that was not satisfactory to any of the parties, either plaintiff, or defendants who claim ownership, and they have all appealed.

Everett and John Robinson were engaged in farming, and raising, buying and selling livestock under the name of M. R. Robinson & Sons. M. R. (Mark) Robinson was their father. He allowed them to use his name and credit but was not as active in the business as his sons. The only agreement they had was that "every fellow just took what he wanted." Chronologically stated, the material transactions involved are as follows:

January 28, 1929, John Robinson and Everett Robinson commenced relations with plaintiff by making a note for $2000. This note was also signed by Mark Robinson. Their account with plaintiff was carried as M. R. Robinson & Sons. Prior to making this loan, Everett

Robinson made a financial statement as to the assets and liabilities of M. R. Robinson & Sons to J. R. Knorpp, plaintiff's cashier. This statement showed 100 acres of clear land valued at $12,500, and town property in Lone Jack consisting of three acres valued at $3500. Other real and personal property, valued at $40,900 in this statement, is not involved in this suit. Liabilities, outside of real estate mort-gages ($10,500 on 140 acres) were shown as $8000 to the Farmers Trust Company of Lees Summit. Net worth was shown as $38,400.

March, 1929, Georgia Robinson, wife of Everett Robinson, sold her interest in a farm (inherited from her parents) to her brothers for $5000. They gave her a note for $4000 and were to later pay $1000 in cash.

March 19, 1929, Georgia Robinson sold her brothers' $4000 note to trust company at Lees Summit, where the Robinsons had previously done their banking business. Georgia Robinson indorsed this note to M. R. Robinson & Sons, and Everett and John Robinson indorsed this note to the trust company as did also Mark Robinson and Elizabeth Robinson. The money was "deposited to M. R. Robinson & Sons;" $2000 was used to pay a note of M. R. Robinson & Sons to the trust company and $2000 was transferred by check to their account with plaintiff and was used in the farming and livestock operations of M. R. Robinson & Sons. At the time this deposit was made Mr. Knorpp was in the hospital but Everett Robinson told plaintiff's assistant cashier in charge "that they had indorsed a note given by Long Brothers" (for Georgia Robinson's share in her father's estate) to one of the Lees Summit banks and asked "if that would affect their credit standing with the bank." The assistant cashier said that he asked him to find out "and tell Mr. Knorpp when he returned whether the indorsement was made without recourse." Everett Robinson said he told the assistant cashier all about how his wife got the note and the use made of the proceeds.

August, 1929, the M. R. Robinson & Sons' loans to plaintiff reached a total of $14,000.

September, 1929, Mark Robinson commenced to build a new house on the Lone Jack property. He contracted this for $5000, but later $300 more was added to the price. There was a small house on this property when it was purchased in 1928 for $3200 with the proceeds from the sale of property Mark Robinson had owned in Independence, and for which he had received about $4000.

October 14, 1929, the Robinsons negotiated a sale of the Long Brothers' note to Georgia Robinson, from the trust company at Lees Summit to a banker at Lone Jack, who carried it until it was paid in full by the makers. Mark Robinson gave Georgia a note for $4000 dated at this time. The amount received, $4152.67, was deposited to the credit of M. R. Robinson & Sons in the Lone Jack bank and a

check for this amount was written to the trust company. Everett Robinson signed the firm name thereto to pay the trust company the amount due it for this note.

October 15, 1929, Mark Robinson borrowed $2000 from plaintiff (signing the note M. R. Robinson & Sons) to make a payment of that amount to the contractor who was building his house. He had previously given the contractor his note for that amount and he paid it with the proceeds of this loan, signing the check M. R. Robinson & Sons.

October 23, 1929, payment was made of all the Robinsons' loans to plaintiff. They had deposited with plaintiff $31,836.41 from sales of livestock during September and October. The total indebtedness paid was $16,000 which included both the $2000 note for Mark Robinson's house and the M. R. Robinson & Sons $14,000 notes. After these loans were paid, there remained a balance of $7641.58 in the M. R. Robinson & Sons account on that date.

November 6, 1929, all of the funds in the M. R. Robinson & Sons account had been checked out ("they just kept on buying stock and feeding and prices just kept going down until there was no value in anything"). Plaintiff made them a new loan on that date of $5000, and by the end of the year their loans there again totaled $16,000.

January 24, 1930, Georgia Robinson's brothers paid her the balance due of $1000 for her interest in her father's farm. This money was also deposited to the M. R. Robinson & Sons' account with plaintiff. Mark Robinson gave Georgia a note for this amount.

February 26, 1930, Mark Robinson borrowed $2500 from Mrs. Nellie Benefield, giving a note due in three years signed "M. R. Robinson & Sons by M. R. Robinson." $1500 of this amount was later paid. The use made of this money was not shown but it was not deposited with plaintiff.

March, 1930, the new house in Lone Jack was completed and Mark and Elizabeth Robinson moved there from the 100-acre farm. Thereafter, Everett and Georgia Robinson lived on the farm.

June 23, 1930, $1000 was paid to plaintiff reducing the M. R. Robinson & Sons' indebtedness to $15,000. Nothing more was ever paid on the principal of this debt.

April 1, 1931, a new statement was made by John Robinson concerning the assets and liabilities of M. R. Robinson & Sons. The land was valued at only $100 per acre and the Lone Jack property (with the new house completed) at $8000. The debts to Georgia Robinson and Mrs. Nellie Benefield, which had been contracted since the 1929 statement, were not listed therein; neither was an older debt to Mrs. Clara Shepherd. Total of all assets was shown as $43,900 and net worth at $18,400.

August, 1931, Mark Robinson was threatened with a lawsuit on an

$1800 note which he had indorsed for his half-brother to his step-brother. After consulting an attorney, he decided to deed his property "for a short time to Everett and Georgia." He chose Georgia as a grantee because he already owed her $5000.

August 10, 1931, Mark and Elizabeth Robinson made a deed (recorded August 19, 1931) to Georgia and Everett Robinson conveying to them the 100-acre farm. The title had stood from purchase in the name of Mark Robinson only.

August 10, 1931, Mark and Elizabeth Robinson made a deed (recorded August 18, 1931) to Georgia Robinson conveying to her the Lone Jack houses and lots. In this deed, the grantors reserved to themselves a life estate. The title had stood from purchase in the names of Mark and Elizabeth Robinson as an estate in entirety.

November 7, 1931, Georgia Robinson signed a note for $12,500 given in renewal of part of the M. R. Robinson & Sons' indebtedness. Prior to that time, plaintiff's cashier had required Georgia Robinson to sign all these notes because he knew or had learned of the deeds of August 10, 1931, by which title to all unencumbered property of the Robinsons had been put in her name.

December 7, 1931, Georgia and Everett Robinson made a deed (recorded December 23, 1921) to Mark and Elizabeth Robinson conveying the 100-acre farm and the Lone Jack houses and lots, creating in them an estate in entirety in all clear land owned.

December 30, 1931, a $2000 M. R. Robinson & Sons' note was renewed and the name of Georgia Robinson appeared thereon in lead pencil. (The others were in ink.) She did not positively deny that she signed it and plaintiff claims it had not been informed at that time of the change in title to the property.

March 1, 1932, a new financial statement was taken from Everett Robinson. It showed the 100-acre farm and the Lone Jack property as assets of M. R. Robinson & Sons and did not list as liabilities the debts due Georgia Robinson, Mrs. Benefield and Mrs. Shepherd. It showed a net worth of only $13,100, which was $4400 less than the valuation, shown therein, of the clear real estate. Plaintiff claimed to have had no knowledge at that time that Georgia Robinson had conveyed the title.

May 19, 1932, plaintiff had previously learned that the title to the clear land had been conveyed by Georgia Robinson (plaintiff claimed that it did not know that an estate in entirety had been created by the deed), and it renewed the $12,500 note without her signature on that date. Mark, Everett and John had come to the bank with an attorney who said that Elizabeth Robinson would not sign the note (as plaintiff's cashier had requested after learning there had been a transfer of title) but who said that they would pay the interest in cash if a renewal was made. After some discussion a re-

newal note was made with their signatures only, and the old note signed by Georgia Robinson was canceled and surrendered. Robinsons' attorney said that they would sell the 100-acre farm as soon as they could and pay the proceeds upon the debt.

June 2, 1932, Mark and Elizabeth Robinson executed a trust deed on the small house and two of the Lone Jack lots to Mrs. Clara Shepherd to secure a note for $600 with interest at six per cent, due in three years. This was the renewal of the balance of an unsecured note for $1300 originating in 1926.

July 2, 1932, the $2000 note made in December, 1931 (upon which the name of Georgia Robinson was written with lead pencil), was renewed without her signature. The old note was canceled and surrendered.

November 7, 1932, plaintiff's cashier went to Lone Jack to confer with Mark Robinson about renewing the $12,500 note which was again due. (Robinsons' attorney had asked reduction or waiver of part of the debt and had said they would take bankruptcy otherwise.) He again asked that Elizabeth Robinson sign this note. No renewal note was ever signed. Everett Robinson said, at that time, he was trying to sell the 100-acre farm.

December 15, 1932, Mark and Elizabeth Robinson executed a trust deed (recorded December 17, 1932), and note for $5933.50, to Georgia Robinson on the 100-acre farm. The note was due in one year with interest at six per cent payable semi-annually.

January, 1933, plaintiff commenced suit against Mark, Everett and John Robinson on all M. R. Robinson & Sons' notes.

March 1, 1933, Mark and Elizabeth Robinson executed a second trust deed and note for $1000 to Mrs. Nellie Benefield (due in three years with six per cent interest).

May 12, 1933, plaintiff obtained judgment against Mark, Everett, and John Robinson for $16,945.54.

October 23, 1933, plaintiff filed this suit and lis pendens notice describing the 100-acre farm, and the town property.

November 27, 1933, foreclosure sale held under trust deed of December 15, 1932, securing $5933.50 note to Georgia Robinson. Trustee's deed, showing sale bid of $5000, was made to Georgia Robinson.

Mr. Knorpp, plaintiff's cashier, testified that, when arrangements for credit were first made by Everett Robinson, he said that "they would clean up their indebtedness once each year (in the fall) and know just where they stood;" that "M. R. Robinson, John W. Robinson and Everett Robinson comprised this firm of M. R. Robinson & Sons;" that "they all had the right to check on it;" that "his wife would have a right to check on it, . . . any of them, honor any check, even to a sister going to school at Warrensburg;" and

that they did all check on this account. Mr. Knorpp said that Mark Robinson told him (when he borrowed $2000 October 15, 1929) that "he owned that 100 acres of land and that he was building a new house on these lots in Lone Jack, . . . it was his and it was clear;" that they "wouldn't see him coming to town very often; that the boys did most of the trading;" that "he says, 'the boys tend to most of all the business for me;' " and that none of the Robinsons told him that the title to the Lone Jack property was held in entirety by Mark Robinson and wife. He further stated that the first he knew of the deeds of August 10, 1931, was about a week after they were recorded when he saw them among the real estate transfers in the Daily Record which the bank took at that time; that he wrote at once to the Robinsons to come in; that Everett and John came in and told him "their father had indorsed a note some time before for a half-brother, . . . for $1800.00, and they were threatening bringing suit to make him pay it, and that he didn't feel like he owed it and they agreed to just hold him on that note for one year and that he didn't think that it was right for him to pay it and they were just deeding this land over to the other parties so that they couldn't get it;" that he then "asked them to have Georgia come in and put her name on these notes in the bank, $15,000 in notes;" that he told them "since the land had been taken out of the name of M. R. Robinson and since Georgia had this house in her name, and the farm was in the name of Everett and Georgia, I would have to have her name on there until this was straightened up and fixed in different shape or redeeded back." Mr. Knorpp also said Everett Robinson told him (when he made the last statement March 1, 1932) that "it had been deeded back the way it was to start with; . . . that this land stood in the name of M. R. Robinson just the same as it was before these deeds were ever made out to any others;" and that he did not discover that an estate in entirety had been created until December, 1932. The statement signed by Everett Robinson, March 1, 1932, did show that M. R. Robinson held title to 100 acres clear land and three acres in Lone Jack with two houses on it. Mr. Knorpp stated that the reason he renewed notes in 1932, without Georgia's signature, "was that all of this land had been deeded back out of her name," according to his information although he had not seen the record; and that he had never since that time talked to Georgia about it.

Mrs. Elizabeth Robinson said that they deeded the lots in Lone Jack to Georgia Robinson in August, 1931, "because we got the money from her to build it (the new house) with and we wanted to protect her." She said "something might have happened to us. If so, the children could have stepped in here and said, we are going to have part of it. It didn't belong to them. It belonged to

Georgia.'' She further testified: ''Q. And the hundred acres was also deeded on account of the threatened liability for this note that your husband had indorsed for his step-brother? A. Yes, sir. Q. Then on December 7th, 1931, Everett Robinson and Georgia deeded the lots back to you and Mr. Robinson? A. Yes, sir. Q. Why was that done? A. She decided she would rather have an interest in the farm than in this property. . . . We thought because of this depression—we thought that this wasn't worth what we paid for it. . . . We promised her an interest in the farm. We first talked about giving her an interest in the home, or a deed to the brick house there, and she decided that she would rather have it on the land, and we thought that would be best too.'' Everett Robinson testified: ''My father was going to build a new house and my wife had this money and it was the agreement when she got this money, whenever he got ready to build this house that she would loan it to him to put in this house. We was living on the home place and it was kind of an understanding between him and her that we would either have that much of an equity in the home place (100-acre farm), . . . or that she would have been secured by the home place some way or another.'' Concerning the conveyances of August 10, 1931, he said: ''He signed a note for his step-brother . . . and in order not to affect our business at the bank and not bother the amount he owed my wife, why he just gave that farm to my wife and I, and the property to her alone. . . . Q. Now, why were the lots deeded to Georgia alone and why was the farm deeded to both you and Georgia? A. Well, Georgia had the $5000.00 and I didn't have it.'' John Robinson said: ''They worried around about Everett and I might go broke and they worried about Georgia getting her money back. . . . They had agreed to give her a mortgage on the home to make her safe for that $5000.00. . . . They talked about both, and finally decided to give it to her on the 100 acres.''

Georgia Robinson testified that she held the notes of Mark and Elizabeth Robinson for $4000 dated October 14, 1929, and for $1000 dated January 24, 1930 (with interest at six per cent), for the money she received from her brothers for her farm interest, from the time they were made until she got the first mortgage on the farm. She said: ''Mr. Robinson had asked to borrow money to build a new house with it on his lots in Lone Jack and I told him I would loan him the $5000.00. . . . I didn't give him no check. He checked it out of the Citizens Bank at Pleasant Hill; . . . Out of the firm account of M. R. Robinson & Sons. . . . Before ever I even got the money I talked to Mark Robinson and he began to talk about building this new house in Lone Jack and that is how come me to go to my brothers and ask for my part of my estate. . . . But Mark Robinson wasn't ready to build the house until

the fall. He didn't agree on the plans and all until the fall of '29. . . . That money was put in the credit of M. R. Robinson and Sons (in March, 1929) . . . for their use. . . . They had the use of it." Before the first deeds (August 10, 1931) were made, she said that Mark Robinson said: "To make you safe I will deed the home place and the farm to you and Everett;" that she "told Mr. Knorpp all this and he told me that was the thing to do;" and that after the deeds were made "he told me he wanted me to sign the notes as long as the property was in my name." She said that at that time she had also told Mr. Knorpp about Mark Robinson indorsing the note to his step-brother. She further stated that she did sign the M. R. Robinson & Sons notes while she held title to the land but did not sign any of their notes after she conveyed it except possibly one note renewed December 30, 1931, concerning which she was not positive. She did not tell Mr. Knorpp about deeding the property back.

Mark Robinson testified that he moved to Independence in 1925 and that his two sons operated the 100-acre farm with their own land, 140 acres mortgaged for $10,500. When he moved, he turned over to the boys cattle and hogs worth $2500. He moved back to the 100-acre farm in 1928 and lived there until his house in Lone Jack was completed in March, 1930. Most of the balance (above $2000 borrowed October 15, 1929) paid to the contractor for building the house was paid by checks on the M. R. Robinson & Sons account with plaintiff. He continued to help run the farm and had no other business or source of income (after he left Independence where he had been employed and owned property) except what was raised on the three acres in Lone Jack and $12 per month rent from the small house there. He checked on the M. R. Robinson & Sons account for what he needed. That was the only account Mark Robinson had with plaintiff. His sons occasionally gave him money, which he kept in his account with the bank at Lone Jack, and he paid the $300 above the contract price on his new house out of that account. He said that all livestock belonged to his sons and that they were trading with it every day. He also said that when the first semi-annual interest came due (June 15, 1933) on the mortgage given to Georgia, "she didn't demand her interest;" that when he gave her the first notes he "expected to pay her some time" but did not know from what source; that he did not "expect to get anything out of the livestock to pay Georgia on these notes;" and that when he deeded the property in August, 1931, he told Georgia he "might get involved in a law suit" (with his step-brother) but "as soon as this was over we could get it back like it was." John and Everett Robinson substantially corroborated their father as to the material transactions above described. They both said that they knew nothing of his

debts to Mrs. Shepherd and Mrs. Benefield when they made the financial statements to plaintiff; and that they never knew (and so stated to Mr. Knorpp) how the title to the Lone Jack lots was originally taken. They both said that they told Mr. Knorpp that John owned another forty acres mortgaged for $5000, but that he said to leave it out of the statement because it would not look good to the bank examiner.

The court by its decree found that the deed of August 10, 1931, conveying the 100-acre farm to Everett Robinson and Georgia Robinson in entirety and the deed of December 7, 1931, by these grantees conveying said farm and the Lone Jack lots to Mark and Elizabeth Robinson in entirety were both "fraudulent and void as to plaintiff and should be set aside;" that the deed of August 10, 1931, "conveying said lots in Lone Jack subject to a life estate in the defendants M. R. Robinson and his wife, Elizabeth J. Robinson, resulted in a waiver of said grantors' tenancy by the entirety in said lots and reserved to said M. R. Robinson and Elizabeth J. Robinson a life estate in said lots;" that the trust deeds to Mrs. Shepherd on part of the lots and to Mrs. Benefield on the farm were given for valid preexisting debts and were valid liens prior to plaintiff's judgment; that the trust deed given to secure the $5933.50 note of Georgia Robinson "was given for a valid preexisting debt and constitutes a valid and subsisting first lien on said farm;" that the foreclosure of this deed of trust "is fraudulent and void as to plaintiff and should be set aside;" and that the "judgment of the plaintiff is a valid and subsisting lien upon said farm subject to said first deed of trust in the sum of Five Thousand Nine Hundred Thirty-three and 50/100 ($5933.50) dollars in favor of the defendant Georgia M. Robinson, and said second deed of trust in the sum of One Thousand Dollars ($1000.00) in favor of the defendant Mrs. Nellie Benefield, and said judgment is also a valid and subsisting lien upon all of said lots in Lone Jack, Missouri, subject to the life estate of the defendant, Elizabeth J. Robinson, and subject to said deed of trust on part of said lots in favor of the defendant Mrs. Clara Shepherd." The decree made appropriate orders in accordance with these findings.

█ On plaintiff's appeal it is contended that all of these transactions were tainted with fraud as to which all of the Robinsons conspired and in which they all participated; that because of such participation Georgia Robinson's mortgage on the farm should be subordinated to plaintiff's judgment; that Georgia Robinson is still liable to plaintiff on M. R. Robinson & Sons' debt; that Mrs. Benefield's mortgage should be subordinated to plaintiff's judgment; and that plaintiff is entitled to a lien for $5000 (of the cost of the new house) prior to the life estate reserved to Mark and Elizabeth Robinson. On defendants' appeal it is contended that plaintiff's judg-

ment should not be a lien on any interest in the Lone Jack lots; that the foreclosure of Georgia Robinson's mortgage should not have been set aside but that absolute title to the farm should have been decreed to be in her; and that plaintiff's bill should have been dismissed. While an equity case is considered *de novo* on appeal, this court will usually defer to findings of the chancellor based upon conflicting oral evidence. The good faith of some of these transactions and the fraudulent character of others, as found by this decree, did depend upon oral evidence of parties who appeared before the chancellor and his opportunity for determining these matters is superior to that of this court. We will, however, determine whether the weight of the evidence is against them.

We find that the evidence was sufficient to sustain a finding of a partnership between Mark Robinson and his sons. [King v. Rieth, 341 Mo. 467, 108 S. W. (2d) 1.] It is also clear that the first transfer of the 100 acres was made without consideration solely to hinder and delay creditors and could not have been allowed to stand if it had been attacked by plaintiff when it was made. However, plaintiff, instead of attacking it, ratified it and consented to let it stand when it got the signature of Georgia Robinson on its notes. Therefore, plaintiff would be (as defendants contend) estopped from now complaining about that transaction, if nothing more had been done. [Milan Bank v. Richmond, 280 Mo. 30, 217 S. W. 74, and cases cited.] Moreover, this estoppel is one that appears from plaintiff's own evidence. [See State ex rel. Consolidated School Dist. v. Haid, 328 Mo. 739, 41 S. W. (2d) 806.] However, the subsequent conveyance made it a different matter. Plaintiff never consented to the new arrangement (estate in entirety in the farm), and there is no evidence that plaintiff knew prior to December, 1932, that an estate in entirety in the 100 acres had been created. Neither is there any evidence that plaintiff knew the lots were again held in entirety by Mark and Elizabeth Robinson. Plaintiff clearly had the right to attack this conveyance of December 7, 1931, which included both farm and town property, and to seek to change the result reached by both conveyances.

The original transfer of the lots seems to have been made as security for the $5000 which Georgia Robinson received from her brothers for her share in the estate of her parents. The evidence is clear and convincing that she actually received this money; that $2000 thereof was used on March 19, 1929, to pay a debt of M. R. Robinson & Sons; that $2000 more went into the firm account at that time and was used in the firm's business; that $1000 more (the final payment) was deposited in the firm account in January, 1930, and was checked out by Mark Robinson to make payments on his house contract. There is much argument in the briefs as to whether this money was used to pay for the new house or was used to buy live-

stock and pay debts. As to charging the cost of this house as a lien in favor of plaintiff, ahead of a life interest of Elizabeth Robinson therein, a sufficient answer to that claim is that the evidence shows that Mark Robinson was not insolvent in 1929 when he was building the house. Instead it shows that all of the Robinsons got completely out of debt to plaintiff and had considerable sums on deposit that fall. When they were later extended credit again, it is a reasonable inference that the stock they bought with proceeds of the new loans was worth what it cost at that time. Moreover, since this is not a' proceeding to trace trust funds, it can make no difference that the firm first used Georgia's money for its operations; that Mark Robinson then used the firm's money to build his house; that he thereafter squared his debt to the firm by assuming the firm's debt to Georgia Robinson as his own; and that she accepted him as solely liable to her therefor. Considering these to be the real facts, Georgia Robinson and plaintiff were both general creditors of Mark Robinson. Neither stood in any better position than the other with regard to a lien on the house, but Mark Robinson had the right to prefer one creditor over the other by honestly giving security for one debt even though he left another of equal validity unsecured. [Peoples Bank by Moberly v. Jones, 338 Mo. 1048, 93 S. W. (2d) 903; Friedel v. Bailey, 329 Mo. 22, 44 S. W. (2d) 9, and cases cited.] The question to be determined is: Did he do only. that?

The effect of deeding the house to Georgia alone (since it was not intended as payment) was to give her a mortgage thereon to secure her $5000 debt although the conveyance was absolute in form. At' the time of this conveyance, it seems reasonable to believe that the property even with the new improvements, conveyed subject to a life estate, would not be worth more than the amount of her debt. An excess of value would have been evidence of a fraudulent purpose (a badge of fraud) but not conclusive. [Friedel v. Bailey, supra.] As in the case of the farm, plaintiff was willing to let this property stand in the name of Georgia Robinson when she signed the notes. If, after being released from the notes, she now claimed the right to hold it against plaintiff as security for her debt, plaintiff (if it did not know all the facts, it would not have ratified the transaction for that purpose) might be heard to complain about that. But she is making no such claim because she took security in another form (the first mortgage on the farm) which was fully ample, and thereby waived all right to claim the town property as security. Nevertheless, she did have the right to demand better security (in 1932 the house was no doubt worth less than her debt including interest) and her debtor had the same right to prefer her in 1932, by giving her what would then be ample security, as he had to prefer her originally in giving her security in 1930. The court found that this mortgage was given in good faith for that purpose. There can be no question

712

about the validity of the debt secured, and the note provided for a reasonable rate of interest. Moreover, plaintiff did have some information about Georgia's money at the time the deal was made with her brothers. So far as a valid trust deed is concerned, it could make no difference whether Mark Robinson held title with his wife in entirety or whether he held it alone, so that setting aside the two conveyances of the farm and placing the title back in him alone could not affect his mortgage. We, therefore, hold that the court properly declared her deed of trust to be a valid first lien on the 100-acre farm.

■ We also hold that the court was warranted in setting aside both conveyances to the farm because they were without actual consideration and result (if permitted to stand) in removing the equity (the evidence shows a substantial equity above this first mortgage) from the reach of plaintiff's execution. It is necessary to set them both aside to place the title to the farm in Mark Robinson where it was when the money was borrowed on representations that the title was so held, and where plaintiff understood it was when it renewed the notes without Georgia's signature. We further hold that the court was justified in setting aside the foreclosure, on the ground that the default for which it was advertised was not an actual bona fide default but was prearranged for that purpose. It was not a default of the entire debt but only of a semi-annual interest payment of less than $180. There is no basis in the evidence for believing that the Robinsons could not have paid it. The evidence is that Georgia Robinson did not demand it. Counsel, representing all parties, advised them to have it foreclosed, and of course the close relationship of the parties is a material circumstance to be considered. ■ However, we agree with defendants' position that the *lis pendens* alone did not prevent a valid foreclosure. [For effect of *lis pendens* see Gehlert v. Smiley, No. 34339, 114 S. W. (2d) 1029, decided concurrently herewith; see, also, 48 Law Series, U. of Mo. Bulletin, 31.] ■ But Georgia Robinson is seeking affirmative equitable relief on her cross bill and no principle of equity is better settled than "he who seeks equity must do equity." Because of all the circumstances, she should be compelled to proceed with special regard for the rights of other creditors. The note did not even contain an acceleration clause so that the nonpayment of semi-annual interest could mature the entire debt. Technically, the trust deed provision would authorize a sale in case of a real bona fide default and we do not mean to hold otherwise. Nevertheless, if the whole debt had been due, the situation would have been very different. The circumstances of these parties were not such that there was any reason for hasty foreclosure (except that plaintiff had commenced this suit), and no rights of bona fide purchasers without notice are involved. All of these matters are material in considering the question of an actual default and the equities involved. ■ The rights of all parties

can be properly protected and preserved at a new sale (under either the first or second trust deed), which could be made under the direction of the court. Plaintiff suggests that the second mortgage to Mrs. Benefield should not have priority over its judgment, but this contention must be overruled because there is not evidence that even tends to show invalidity of this debt. Mark Robinson had the same right to prefer her in giving security as he did to prefer Georgia Robinson. With the foreclosure set aside, both trust deeds stand as valid liens prior to plaintiff's judgment.

█ This leaves for consideration the status of the town property. The conveyance thereof by Georgia to Mark and Elizabeth Robinson (it was included in the same deed with the farm) was set aside. The plain purpose of that deed was to put all property out of reach of plaintiff, by creating an estate in entirety in all of it at a time when it was all held so as to be subject to plaintiff's debt (title in Georgia Robinson who had signed the notes), and also at a time when there can be no question about the insolvency of the partnership. The fraud in this case, to which plaintiff is entitled to object, is the creation of an estate in entirety in property then held so as to be subject to plaintiff's debt; and not the later giving of security for Georgia Robinson's valid debt of which plaintiff had notice, and which Mark Robinson had a right to honestly prefer at any time over plaintiff's debt. This deed was properly set aside and, when it was set aside, the title to the town property remained in Georgia alone, where it was when she had signed the notes. Even if it had been originally given as security for her debt, she had no right to hold it against plaintiff's judgment when she got other ample security for her debt, and had released it from that debt. She had been released by plaintiff from liability on the Robinsons' debt by representations made by them that she no longer had title, but with the belief that title was still held so that it was subject to plaintiff's debt. We hold that plaintiff is entitled to a lien upon the town property because, when it was put in Georgia Robinson's name, it was made available as a basis of credit and to obtain renewal of indebtedness as a part of the assets subject to the partnership debts, and she signed the note as holder of the title for that purpose. Therefore, it is proper that the title, placed in her by setting aside her conveyance of it, should be considered as held by her as trustee for the purpose of securing the Robinsons' debt to plaintiff; and that a court of equity should order it sold and the proceeds applied upon plaintiff's debt.

The part of the decree upholding her mortgage can stand only because Georgia Robinson's dealings concerning her own valid debt were kept separate from the voluntary transfers, which created the estate in entirety; because plaintiff knew that the partners or some of them were indebted to her; and because the court found that she had no actual fraudulent intent. Otherwise, the principle urged by

plaintiff would apply to Georgia Robinson, namely: "When a creditor by fraud will attempt to defeat the claims of other creditors, there is no hardship (of which he can complain) in postponing his demand although a just one to those which he is endeavoring to defeat." [Friedel v. Bailey, supra.] Since she had plaintiff's consent to hold title, it is not conclusive as to participation in fraud that she conveyed the property back as an estate in entirety, since plaintiff also understood that she would do so at some time and she might not be expected (because of limited experience) to understand the full effect of the joint deed. Such a transfer would be constructively fraudulent without such understanding, but knowledge would be material upon the question of actual fraudulent intent. Moreover, plaintiff is not in a very good position to raise the question of her participation in a fraudulent conveyance since it consented to let the first transfer stand knowing that its purpose was to defeat a creditor of Mark Robinson. While the decree states that the deed of August 10, 1931, conveying the lots in Lone Jack subject to grantor's life estate "resulted in a waiver of said grantor's estate by the entirety," it would probably be more accurate (although the result reached would be the same) to say that Mark and Elizabeth Robinson conveyed everything they had, except a life estate, in these lots, and that they never got back any interest therein by any lawful conveyance which could stand against the lien of plaintiff's judgment. Since they put the title to this property in such condition as to make it appear to plaintiff that it would be subject to its debt, and obtained renewals while it was so held, it was proper for the court to replace it where it can be subject to plaintiff's judgment. Our conclusion is that the evidence is sufficient to support all findings made in the decree; that, under all the circumstances, the decree properly determines the equities of the entire situation; and that it reaches a fair and correct solution.

▉ As to plaintiff's claim that Georgia Robinson is still liable for its debt, that cannot be determined in this action. [Bewes v. Buster, 341 Mo. 578, 108 S. W. (2d) 66, and cases cited.] It is significant that plaintiff failed to seek an adjudication of that issue in its suit to establish the debt against the other Robinsons. Certainly there is no evidence in the record that she either made any representation to obtain renewals without her signature or consented to any renewals. Moreover, plaintiff's cashier himself testified that she was only expected to sign the notes while the title to the farm remained in her name. Apparently his purpose was only to be in position to reach the land through judgment against all title holders, and not to extend credit on her personal obligation.

The decree is affirmed. *Ferguson* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur, except *Douglas, J.,* not voting because not a member of the court when cause was submitted.