FORREST A. TALLEY and CYRENA M. TALLEY v. BETTY BUCHANAN and GRANVILLE A. RICHART, Appellants.—No. 39111.—185 S. W. (2d) 23.

Division One, February 5, 1945.

*C. W. Prince* and *William R. Ross* for appellants.

914

*Schultz & Bodney* and *Walter A. Raymond* for respondents.

DOUGLAS, J.—This is an action to enjoin the sheriff of Jackson County from selling real property under an execution and to prevent the holder of a judgment from asserting any claim against the property.

John R. Morgan acquired two adjoining apartment buildings in Kansas City. He borrowed from Betty Buchanan the amounts of the down payments he made in purchasing each apartment. An insurance company held a first mortgage and the Chrisman-Sawyer bank of Independence a second blanket mortgage covering both of them. Morgan became financially distressed. Proceedings were started to foreclose the first mortgage. They were stopped upon Morgan's producing receipted tax bills covering the properties and upon his making certain payments. The check which Morgan gave in payment of the tax bills was not paid but was returned by the bank so that the taxes were still not satisfied. The holder of the first mortgage then insisted Morgan have nothing further to do with the management of the properties. He thereupon deeded them to his wife who took over the management and collected the rents. Mrs. Morgan turned to her daughter, plaintiff Cyrena R. Talley, for help in keeping up the payments. Cyrena and her husband, plaintiff Forrest A. Talley, made payments which totalled $3,006.16 in an attempt to meet the obligations of the deeds of trust and maintenance expenses. A garnishment of the rents due apparently stimulated the bank to action in foreclosing the second mortgage for the nonpayment of two years' delinquent taxes. The Talleys made plans for a line of credit at their bank to finance the purchase of the apartments at the foreclosure sale. They were sent by their bank to the Chrisman-Sawyer bank where they learned the upset price at the sale would be the amount of the second mortgage and cost of foreclosure or a total of $3,822.96. They were advised by the officials of the latter bank to write off the money they had already paid on the apartments and were discouraged from bidding for them for the reason real estate values were then depressed and apartments a bad risk. However, at the sale the Talleys bid in

916

the apartments at the upset price. The Chrisman-Sawyer bank loaned them the amount of their payment secured by a second mortgage on the apartments. The Talleys put up no cash for the purchase. They bought the apartments subject to the first mortgage and also subject to the unpaid taxes which amounted to about $3,000.

About a year later Morgan took bankruptcy. In his schedules he stated the plaintiffs held the title to the apartments for him; the foreclosure was for the purpose of shutting out other creditors and that the equity "is actually my equity subject to the rights of Talley and wife who I owe $1,500." He also stated the Talleys "bought in my apartments for me, to return same when I repay them." The trustee in bankruptcy seemingly was unsuccessful in having Morgan's alleged equity in the apartments included in the bankrupt's estate. At the time Morgan was to be discharged from bankruptcy Betty Buchanan objected to his discharge but withdrew her objections when he gave her his promissory note for $10,378. She later got judgment on the note and instructed the sheriff to levy on the apartments and sell Morgan's interest in them. The sheriff made the levy and was advertising the apartments for sale when the Talleys filed this suit to enjoin the sale.

The defendants' answer alleged the Talleys obtained the apartments under an agreement with Morgan for the purpose of defrauding his creditors and in pursuance of the agreement they provoked the foreclosure; and the Talleys hold the title in trust for Morgan.

The chancellor found the evidence did not sustain the allegations of defendants' answer; the foreclosure sale was regular and valid; the plaintiffs were the absolute owners of the apartments; and the apartments were not subject to the lien of Betty Buchanan's judgment. He cancelled the levy and enjoined defendants from proceeding with the execution sale. Defendants appealed.

No question is raised about the propriety of subjecting the apartments to the lien of the second deed of trust which was foreclosed. Good faith in so doing must be conceded. The only charge concerns the foreclosure itself. The evidence fails to sustain the charge that it was based on fictitious grounds or induced by collusion. At the time of the foreclosure sale the deed of trust was in default. The default for nonpayment of taxes was chargeable directly to Morgan himself. The default was bona fide. It had existed for a longer time than usually is permitted. There was no inducement, not even a request, by the Talleys that the bank commence foreclosure proceedings. There was no prearrangement with the bank that the sale would be made to the Talleys. The identity of the purchaser was left to the bidding at the sale, the conduct of which is not attacked. The fact the bank advanced credit to the Talleys for the amount of their bid is no evidence of any collusion, nor can any inference of unfair dealing be drawn from it. The amount paid plus the amount of the

delinquent taxes assumed by the Talleys added to the sum the Talleys had already advanced for the property more than exceeded the value of the equity. The conveyance to them was in nowise a voluntary conveyance.

The facts of this case do not bring it within the cases relied on by appellants. In Woodard v. Mastin et al., 106 Mo. 324, 17 S. W. 308, overruled on other ■■■■ grounds, the court found on a different state of facts that a foreclosure sale was for the purpose of defrauding creditors and stockholders so as to gain control of a company, and termed it "a plain, straightforward fraud." Nor is Miller v. Leeper, 120 Mo. 466, 25 S. W. 378, also overruled on other grounds, apposite because of the difference in facts. The holding in that case was that property bought by a debtor's wife with money obtained by placing on the debtor's property an encumbrance in the execution of which the debtor joined, was fraudulent as to creditors. The ruling in Citizens Bank of Pleasant Hill v. Robinson, 342 Mo. 697, 117 S. W. (2d) 263 is likewise not applicable. A foreclosure was set aside in that case because there was no actual bona fide default but a fictitious one was prearranged for the express purpose of bringing about a foreclosure.

■■■■ The Talleys introduced as part of the plaintiffs' case the entire record of Morgan's bankruptcy proceedings in an attempt to show that Morgan had been discharged from liability on his debt to Betty Buchanan. They did not offer merely the schedule showing the debt and the discharge, nor did they attempt to restrict their offer of the entire proceedings for the specific purpose of showing the debt was discharged. They put in the entire proceedings without qualification or limitation. Even though the statements were contained in evidence the Talleys themselves introduced, the Talleys were not conclusively bound by them because there was other evidence introduced by the Talleys which contradicted the statements. This evidence was that they, the Talleys, were the absolute owners of the apartments. Had the statements been the only evidence offered by the Talleys about the ownership of the property they would be in no position to deny them, having introduced them, and in such a case would be bound by them. The fact that the Talleys introduced the statements in evidence does not prevent them from establishing their absolute title by other independent evidence which contradicts the statements.

It is well settled a party may contradict his own witness by independent evidence showing facts to be different from those testified to by such witness. Vitale v. Duerbeck, 332 Mo. 1184, 62 S. W. (2d) 559; Holland v. Missouri Pac. R. Co., 210 Mo. 338, 109 S. W. 19. And see the discussion in Draper v. Louisville & N. R. Co., 348 Mo. 886, 156 S. W. (2d) 626. Such rule does not violate the general rule that one may not impeach his own witness because to contradict is not to impeach. The terms are not synonymous. Impeachment is directed to the credibility of the witness for the purpose of discrediting him.

It ordinarily furnishes no factual evidence. Contradiction, on the other hand, is directed to the accuracy of testimony and supplies additional factual evidence to be considered along with such testimony. Such evidence as is relevant to the issues may not be excluded because it contradicts another witness called by the same party, whether such witness is friendly or hostile. The fact the Talleys put the statements in evidence does not prevent them from also introducing contradictory evidence for the purpose of establishing their title as an absolute one.

■ Because the statements are in the form of documentary evidence does not make them inviolate to contradiction by other evidence. As to the right to contradict testimony contained in a deposition by independent evidence offered by the same party who introduced the deposition see Woelfe v. Connecticut Mut. Life Ins. Co., 234 Mo. App. 135, 112 S. W. (2d) 865; Costello v. Pitcairn (Mo. App.), 116 S. W. (2d) 257. Also see Diarotti v. Mo. Pac. Ry. Co., 262 Mo. 1, 170 S. W. 865 and Smith v. Ohio Millers' Mut. Fire Ins. Co., 320 Mo. 146, 6 S. W. (2d) 920. The same rule about contradicting oral testimony of one's own witness is applicable to written statements introduced in evidence.

The case of Chlanda v. St. Louis Transit Co., 213 Mo. 244, 112 S. W. 249, does not hold otherwise. There it was ruled that a party, after offering a lease and using it as proof, could no more impugn its validity than he could impeach a witness he had put on the stand. The court held he could argue as to its legal effect but he might not argue it was not what it purported to be, that is a valid lease. In the instant case the Talleys could not be heard to say the bankruptcy proceedings which they introduced were not in truth such proceedings and that such statements were not made therein. But it cannot be held under the circumstances that the Talleys vouched for or admitted the truth of the statements. The statements are entitled only to such consideration as their natural probative value warrants. They must be considered together with the other evidence introduced ■ by the Talleys but they are indeed not conclusively binding upon the Talleys. Other cases from this and foreign jurisdictions cited by appellants are not in point.

■ At the close of defendants' evidence the plaintiffs contended before the chancellor that defendants had failed to sustain the burden of proving the fraud charged in their answer. The chancellor agreed and so ruled. Thereafter no further evidence was adduced by either party. In this situation no unfavorable inference can be drawn because of the plaintiffs' failure to call Mrs. Morgan as a witness to tell of matters peculiarly within her knowledge or because of the failure of plaintiff, Forrest A. Talley, to testify, he being a party to the suit. The rule ordinarily permitting such an inference is not pertinent here. Their testimony would have been only cumulative.

The rule does not apply where the testimony is unnecessary. Houghton v. Jacobs (Mo.), 246 S. W. 285. In this case the burden of proof as to the charge of fraud was on the defendants and until they made a prima facie case on such charge no unfavorable presumption arises because of the failure of plaintiffs to put on testimony in defense. No duty to speak rests on the party charged until the other party has made a prima facie case against him. Russell v. Franks, 343 Mo. 159, 120 S. W. (2d) 37; Rissell v. St. L.-S. F. Ry. Co., 336 Mo. 845, 81 S. W. (2d) 621; Shidloski v. New York C. & St. L. R. Co., 333 Mo. 1134, 64 S. W. (2d) 259. Reviewing the evidence we find defendants did not make a prima facie case.

The previous transfers of the apartments by Morgan to another daughter and the shuffling of the title between them and finally the voluntary conveyance to Mrs. Morgan have no bearing in this case. They are in no way connected with the bank's foreclosure.

The fact that Morgan's daughter was a joint purchaser at the sale does not of itself establish fraud. The rule does not go so far. It simply requires close scrutiny of dealings between parent and child where the rights of creditors are involved. Moberly v. Watson, 340 Mo. 820, 102 S. W. (2d) 886.

The evidence supports the judgment. It should not be disturbed. Judgment affirmed. All concur.