MAYME B. BAIL. APPELLANT, v. JOHN L. MILES, SHERIFF, ET AL., RE-SPONDENTS.*

Kansas City Court of Appeals. May 21, 1928.

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, section 2833, p. 849, n. 41; section 2868, p. 898, n. 87. 91; Evidence, 22CJ, section 57, p. 123, n. 36; Usury, 39Cyc, p. 888, n. 4; p. 971, n. 4; p. 995, n. 48; p. 1051; n. 42; p. 1055, n. 77.

*John A. McGuire* for appellant.

*Ryland, Boys, Stinson, Mag & Thomson* for respondents.

FRANK, C.—Plaintiff claims to be the owner of certain real estate in Jackson county, Missouri, and by this action seeks to enjoin defendants from selling said real estate under a deed of trust given thereon to securing a note in the principal sum of $2500, and also asks that said note and deed of trust be cancelled and for naught held. Upon the filing of plaintiff's petition, accompanied by the required bond, a temporary injunction was granted. On final hearing the finding and judgment was for defendants and plaintiff appealed. The pleadings are not assailed and we will not lengthen this opinion by a reproduction of them. The theory of the petition is that defendant Kelley, holder of the $2500 note secured by deed of trust on plaintiff's land, pledged said note to defendant, Skeer, to secure a usurious loan made by Skeer to Kelley, and on account of said usury, the pledge of the $2500 note to Skeer was invalid and illegal; that Skeer acquired no title to the pledged note and for that reason had no authority to sell plaintiff's land under the deed of trust securing it.

The petition alleges that defendant Miles, sheriff of Jackson county, acting as substitute trustee in said deed of trust had advertised plaintiff's land for sale on November 1, 1926, and would sell same on said day unless restrained from so doing. Defendants, Miles and

Kelley defaulted. Defendant Skeer answered admitting that the note and deed of trust in question was delivered to him by defendant Kelley, and that defendant Miles, acting as substitute trustee in said deed of trust had advertised the land described in said deed of trust for sale and was proceeding to sell same. The answer denies that the transaction by which defendant Skeer secured the $2500 note from defendant Kelley was tainted with usury, and affirmatively alleges that the note was delivered to him by Kelley before maturity, for value, without notice of defect, if any, in the title of Kelley to said note, and without notice of plaintiff's equity, if any, in the property securing it; that defendant is the innocent holder of said note for value and that it is past due and unpaid.

The prayer of the answer is that plaintiff take nothing by her action, and that defendant be adjudged the legal owner and holder of said note and deed of trust; that said deed of trust be adjudged a first lien upon the property described therein, and that the court ascertain and determine the right of the substitute trustee to foreclose same and for such other and further relief to which defendant may be entitled. The trial court found for defendants and rendered judgment dissolving the temporary injunction and authorizing defendant Miles, as substitute trustee, and defendant Skeer to proceed with the foreclosure.

The record reveals the following facts: Defendant Kelley, one Johnson and Harry Bahl, husband of plaintiff were engaged in the real estate and building business in Kansas City, Missouri. They were the owners of and operated two companies, Kelley-Johnson Realty Company and Bahl Building Company. A lady by the name of T. G. Hill was employed by Kelley-Johnson Realty Company as a stenographer. It was the practice of this company when acquiring real estate, to take the title thereto in the name of its stenographer, T. G. Hill. When real estate was sold by the company, she would, at the request of the company, execute a deed to the purchaser.

On July 27, 1925, T. G. Hill executed a warranty deed conveying to plaintiff, Mayme F. Bahl all of lot 55, except the west thirty-nine feet thereof, except the south seventeen feet of said lot, Harpers' Meyer Boulevard Addition, an addition to Kansas City, Missouri, according to the recorded plot. Subject to easement for driveway.

This deed was not filed for record until October 15, 1926.

On September 24, 1925, defendant Kelley procured T. G. Hill to execute a deed of trust on the lands she had theretofore conveyed to plaintiff, for the purpose of securing a note for $2500. The note was executed by T. G. Hill and made payable to R. E. Hutchins, who endorsed it "without recourse" and delivered it to defendant, Kelley.

Kelley testified that he owed Bascomb-Daniels Lumber Company on a block of houses on Meyer Boulevard; that he procured Miss

Hill to execute the $2500 note and deed of trust, and delivered them to the Lumber Company as security to prevent the filing of a lien on these houses. He also testified that at the time he procured Miss Hill to execute this deed of trust, he did not know that the land covered by it had theretofore been conveyed to plaintiff by Miss Hill. He also testified that he knew that the house on the premises in question was built for Harry Bahl, plaintiff's husband.

In December, 1925, Kelley procured the $2500 note and deed of trust back from the lumber company and deposited it with defendant Skeer as collateral security to a $3500 note (exhibit 4), which Kelley had theretofore executed to Skeer-Rose Investment Company.

The contention of appellant is that the $3500 note executed by Kelley was for a usurious loan; that this taint of usury rendered the pledging of the $2500 note as collateral to the $3500 note, invalid and illegal.

Usury is defined to be interest in excess of a legal rate charged to a borrower for the use of money. If a lender exacts from the borrower more than the legal rate of interest for the use of money, the contract is usurious, and it cannot be purged of the taint of usury by denominating the excess charge something other than interest, such as commission, discount or brokerage. [Western Storage & Warehouse Co. v. Glasner, 169 Mo. 38, 47, 48, 68 S. W. 917, 918.]

Section 6496, Revised Statutes of Missouri, 1919, renders invalid and illegal all pledges of personal property made to secure usurious indebtedness. This statute reads,

"Usurious Interest—Mortgage Invalid—In actions for the enforcement of liens upon personal property pledged or mortgaged to secure indebtedness, or to maintain or secure possession of property so pledged or mortgaged, or in any other case when the validity of such lien is drawn in question, proof upon the trial that the party holding or claiming to hold any such lien has received or exacted usurious interest for such indebtedness shall render any mortgage or pledge of personal property, or any lien whatsoever thereon given to secure such indebtedness, invalid and illegal."

The pledging of a note as collateral security to a principal note is a pledge within the meaning of the above-quoted statutes, and the validity of such a pledge must be determined in the light of the provisions of this statute. [Winfrey v. Strother, 145 Mo. App. 115, 117.]

The decisive question in this case is whether or not the obligation to which the $2500 note and deed of trust securing it was pledged as collateral security, is tainted with usury. If so, the pledge was void and the pledgee did not acquire title to the pledged note, and had no authority to foreclose the deed of trust securing it.

In determining whether or not a contract is usurious, usury is never presumed. The burden of proving it is on the party who asserts it, which in this case is the plaintiff.

The trial court found that plaintiff failed to establish the charge of usury. The judgment recites,

"The court further finds that the plaintiff has failed to establish her charge of usury in connection with said transaction; that the only witness who testified to any such charge, testified to the contrary on cross-examination."

It is conceded that the only witness who testified concerning usury, was defendant, Kelley.

Let us examine the evidence of this witness, and see whether or not, it justifies the finding of the trial court. His evidence shows without contradiction that the $2500 note and the deed of trust securing it were pledged to defendant, Skeer, as collateral security to a $3500 note held by Skeer. It is equally clear that at the time Kelley borrowed the $3500 and executed his note therefor that Skeer exacted and defendant paid a commission of $280 for making the loan, in addition to seven per cent interest on the full amount of the note. This evidence is uncontradicted. Standing alone, it shows that Skeer exacted, and Kelley paid, more than the legal rate of interest for the $3500 loan, and would justify a finding that the pledge of the $2500 as collateral to the $3500 was invalid and illegal, but other evidence of this witness must be considered. He testified that he owed Skeer a $3250 note and a $1000 note in addition to the $3500 note. In his examination in chief he testified that the $2500 was not pledged as collateral security to the $3250 note. In an affidavit made by him and in his cross-examination he flatly contradicts his testimony in chief by swearing that the $2500 was pledged as collateral to the $3250 note. If the $2500 note was pledged as collateral to the $3250 note, the pledge would be valid unless it be shown that the $3250 note was tainted with usury. He was asked on cross-examination what he got out of the $3250 note and he said that he did not remember just what he did get; that the rate he generally got from defendant was about seven per cent interest and he believed eight per cent discount in a year. There was no testimony as to what he got out of the $1000 note or the rate of interest he paid thereon. He was asked on cross-examination if at the time he pledged the $2500 to defendant, it was not orally agreed that it should be held as collateral security for all of the debts he owed. His answer was,

"A. I don't believe we had any, no; I was going to pay off all the notes.

"Q. That was the oral agreement between you? A. I think it was."

This evidence of the witness is not sufficient to show that the $3250 was tainted with usury. He testified that he did not remember what he got for the note. No attempt was made to prove usury as to the $1000 note.

If the $2500 was pledged as collateral to secure the $3250 note or the $1000 note, either pledge would be valid, because the evidence does not show usury in connection with either of these notes.

The witness first testified that the $2500 was pledged to secure these two notes. Later, he testified it was not so pledged. It was within the province of the chancellor to determine which, if either, of these conflicting statements were true.

Point is made by appellant that an owner of real estate is not in a position to attack the ownership of a lien upon such real estate, on the ground that such lien was acquired through a usurious transaction, unless such owner would be entitled to a cancellation of the lien, in event the holder of the lien had no title thereto because acquired in a usurious transaction.

The gist of this contention is that if Kelley had a valid lien upon plaintiff's property securing the $2500, his attempt to convey it to Skeer being void, did not destroy the lien, but left it valid in the hands of Kelley, and being a valid lien, plaintiff was in no position to complain because Skeer attempted to foreclose it, although he was not the owner of the lien.

There is no merit in this contention. An absolute stranger to a lien, not purporting to act as agent of the owner of the lien, has no authority to intermeddle and attempt to foreclose it.

Defendant Skeer did not testify in the case. Appellant contends that the facts about which the truth was sought were peculiarly within his knowledge and his failure to appear and testify raises an unfavorable and damaging presumption against him.

It is true where matters charged against a party are peculiarly within the knowledge of the party charged, the failure of such party to appear and testify at the trial carries with it an unfavorable and damaging presumption (Parish v. Casner, 282 S. W. 398, 412), but this rule of law has no application to a case where the party upon whom the burden of proof rests, fails to make out a case. No duty rests upon the party charged, to speak, until the other party has introduced evidence which unexplained, makes a case against him. [22 C. J. 123; United States v. Cowart et al., 205 Fed. 316, 319; Frohman v. Lowenstein, 315 Mo. 339, 362.]

Other points are made in brief, but as both parties tried the case in the lower court on the theory that the only question at issue was whether or not defendant Skeer exacted usury from defendant Kelley at the time he took the note and deed of trust in question, we will consider it here on the same theory.

Contention is made that the findings of the chancellor are not binding on us here. We are familiar with the well-settled rule that the finding of the chancellor is not binding on us. It is not only our right but our duty to examine the entire record and determine for ourselves, the rights of the parties, and if our own conclusions run counter to those of the chancellor, we should, in the end, do what our own conscience and judgment dictates.

The lower court saw the witnesses, observed their manner of testifying their candor or lack of candor and for these reasons had a better opportunity to weigh the testimony than we have from reading the printed record. We should, therefore, defer somewhat to the finding of the lower court unless we are convinced from a reading of the entire record, that the judgment was for the wrong party.

We are not so convinced in this case and therefore affirm the finding and judgment of the lower court. *Williams', C.,* concurs.

PER CURIAM:—The foregoing opinion by FRANK, C., is hereby adopted as the opinion of the court. All concur, except *Trimble, P. J.,* absent.