E. L. RISSELL v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, a Corporation, Appellant.—81 S. W. (2d) 621.

Division One, April 17, 1935.

*Joseph W. Jamison, Henry S. Conrad, L. E. Durham* and *Hale Houts* for appellant.

*F. P. Sizer* and *H. A. Gardner* for respondent.

GANTT, P. J.—Action to recover damages for personal injuries. Plaintiff sued under the Federal Employers' Liability Act (45 U. S. C., Secs. 51-59) for a violation of the Federal Safety Appliance Act (45 U. S. C., Secs. 2, 8).

In substance the petition charged that plaintiff was an employee of defendant as brakeman; that at the time of the injury the defendant was engaged and the plaintiff employed in interstate commerce, and that the injury was caused by defendant using a car not equipped with a coupler and coupling device which would couple automatically by impact and without the necessity of plaintiff's going between the cars. The answer was a general denial. Judgment for plaintiff for $22,500, and defendant appealed.

Defendant contends that there was no substantial evidence tending to show that at the time plaintiff was injured it was engaged and plaintiff employed in interstate commerce. The burden was upon

plaintiff to so prove. [Jarvis v. Railroad, 327 Mo. 428, 440, 38 S. W. (2d) 602.] There was evidence tending to show the following:

Plaintiff was the head brakeman on defendant's northbound local freight train from Springfield, Missouri, to Kansas City, Missouri. The train contained a car of merchandise for the station Weaubleau. On arrival at said station plaintiff uncoupled the train four or five cars from the engine and immediately south of the merchandise car. On signal from him, the engine and four or five cars, with plaintiff aboard, moved northward beyond a switch stand. Plaintiff then connected the main track with a side track by operating the switch, and on signal from him the engineer moved the engine and cars, with plaintiff aboard, southward on the side track to the station platform, where plaintiff uncoupled and left the merchandise car. Thereafter he did the local switching and then coupled a car on the side track to the cars coupled to the engine. He then boarded the cars coupled to the engine, and on signal from him the engineer moved the engine and cars northward onto the main track and beyond said switch stand. Plaintiff then disconnected the side track from the main track by operating the switch. He then stepped on the stirrup of the ladder on the southeast corner of the furthermost car from the engine. On signal from him, the engineer moved the engine and cars southward on the main track. When the car furthermost from the engine was within forty feet of the north car of the string of cars on the main track, plaintiff signaled the engineer that said car was within said distance of said north car. He then signaled the engineer to reduce the speed. The engineer responded by doing so. Thereupon plaintiff stepped to the ground and "trotted" southward along the east side of the track toward the northeast corner of said north car. He did so to lift the pin and open the knuckle of the coupler of said north car by operating the lever which extended from the coupler to the east side of the car. On reaching the northeast corner of said north car, he made three attempts to lift the pin and open the knuckle by use of the lever, but was unable to do so. He then stepped between the rails with his back to the moving engine and cars, and with his hands attempted to adjust the coupler for coupling. While making said attempt, the drawbar of the furthermost car from the engine engaged the drawbar of said north car, thereby crushing plaintiff's right hand and wrist.

Plaintiff's testimony was the only evidence on the subject of a movement in interstate commerce. He testified as follows:

"Q. What time would you say you left Springfield that day? A. Around seven o'clock.

"Q. In the morning? A. Yes, sir.

"Q. And what kind of a train—what was the consist of your train that went out there? State whether or not you had any interstate loads or not? A. Yes, sir, we had loads from Kansas City that

come around through Kansas; we would have, every day, merchandise out of Kansas City and other things in there.

"Q. Interstate shipments? A. Yes, sir.

"Q. Now about how many loads did you come out of Springfield with? A. Twelve or fifteen.

"Q. Twelve or fifteen? A. Yes, sir.

"Q. What was your first stop out of Springfield? A. Well, that is a local. We stop most every place; I think Willard was our first stop.

"Q. Well, at Weaubleau, did you have occasion to do some work there? A. Yes, sir, we had merchandise to set out there for one thing.

"Q. Well, was it an entire merchandise car or just a lot of loose merchandise to take out of a merchandise car? A. Well, I don't remember; we always had a merchandise car to set out.

"Q. For Weaubleau? A. Yes, sir.

"Q. And that comes around over the Fort Scott, Kansas, division of the Frisco into Springfield and up here? A. I think so, yes, sir.

"Q. Well, when you got into Weaubleau how many cars did you have in your train, if you remember? A. I can't tell for sure, but ten or a dozen."

We will assume, but not rule, that there was substantial evidence tending to show that the car for Weaubleau was interstate. Even so, there was no direct evidence tending to show that after said car was delivered at Weaubleau there remained in the train either an interstate load or interstate freight. In this situation plaintiff submits the question on the facts and circumstances in evidence.

We judicially know (State v. Railroad, 212 Mo. 658, 676, 677, 111 S. W. 500) there were twelve stations between Springfield and Weaubleau. There was no evidence tending to show that interstate loads in the train were destined beyond Weaubleau. For ought that appears, the other interstate load or loads may have been for delivery at stations south of Weaubleau. If so, it must be inferred that delivery was made according to destination. Furthermore, the fact that on arrival at Weaubleau the train consisted of ten or twelve cars in no way tends to show there was interstate freight in the train after delivery of the merchandise car at said station. Plaintiff did not testify that after delivery of said merchandise car that the train contained interstate freight. Indeed, he testified that he did not know whether the four or five cars coupled to the engine at the time he was injured were loaded or empty. It was a local train. The interstate loads may have been delivered and empty cars taken in the train at stations south of Weaubleau. Furthermore, it cannot be presumed from the fact that the train left Springfield with interstate loads that its consist was in whole or in part interstate at the

time plaintiff was injured. The consist of a train is not continuous in its nature. [22 C. J., p. 87; Fifth-Third National Bank v. Mc-Crory, 191 Mo. App. 295, 297, 177 S. W. 1058.]

But plaintiff argues that the consist of the train at the time of his injury was within the knowledge of defendant, and that from defendant's silence on the question at the trial, a presumption arises that the train at the time of plaintiff's injury contained interstate freight. He cites Osborne v. Gray, 241 U. S. 16. In that case it was the contention of the defendant and not the plaintiff that the movement of the cars was in interstate commerce. In other words, the burden was upon defendant to show the interstate character of the cars. In ruling the question the court said: "The defendant knew the actual movement of the cars, and failing to inform the court upon this point cannot complain that they have been deprived of a Federal right." In an action under the Federal Employers' Liability Act we stated the rule as follows:

"The true rule as to an adverse party's duty to produce testimony is thus well stated in Bahl v. Miles et al., 222 Mo. App. 984, 6 S. W. (2d) 661, 664: 'It is true, where matters charged against a party are peculiarly within the knowledge of the party charged, the failure of such party to appear and testify at the trial carries with it an unfavorable and damaging presumption (Parish v. Casner (Mo.), 282 S. W. 392, 412), but this rule of law has no application to a case where the party upon whom the burden of proof rests fails to make out a case. No duty rests upon the party charged to speak until the other party has introduced evidence which, unexplained, makes a case against him (22 C. J. 123; United States v. Cowart et al. (D. C.), 205 Fed. 316, 319; Frohman v. Lowenstein, 303 Mo. 339, 362, 260 S. W. 460.'" [Shidloski v. New York, C. & St. L. Railroad, 333 Mo. 1134, l. c. 1145, 64 S. W. (2d) 259, l. c. 264.]

There was no substantial evidence tending to show an interstate movement at the time plaintiff was injured.

The question of plaintiff's right, under the petition, to try the case as for a violation of the Safety Appliance Act only is reserved.

The judgment is reversed and the cause remanded. All concur, except *Coles, J.*, not sitting.