900

**BURROUGHS et ux.  v.  HENN.**

No. 22024.

Kansas City Court of Appeals.

Missouri.

June 7, 1954.

Roger S. Miller, Ira K. Witschner, Charles V. Garnett, Kansas City, for appellant.

Ted Houx, Jr., James F. Higgins, Kansas City, for respondents.

SPERRY, Commissioner.

Plaintiffs, the father and mother of Sandra Jean Burroughs, deceased, brought this suit against Mr. Henn, operator of an automobile which struck and killed Sandra on a public street of Kansas City. The case was submitted on the humanitarian theory of negligence. From a judgment for plaintiffs in the amount of $7,500 defendant appeals.

The sole question presented here is the sufficiency of the evidence to justify submission of the case to the jury.

Sandra was 28 months of age at the time the accident occurred. Her mother testified to the effect that she then lived on the south side of Independence Avenue, about ¾ of a block west of Grand Avenue; that, at about 3:00 p. m., on August 30, 1951, Sandra went into the yard to play with two older children of plaintiffs; that, a few minutes later, she learned that the child had been struck by an automobile; that she went to the intersection of Independence and Grand, where she found Sandra lying in the street, fatally injured.

Officer England, of the accident investigation unit of the Kansas City police department, arrived at the scene of the accident shortly after it occurred. He made measurements of the streets, of the location of the body therein, and of the location of defendant's automobile. He stated that Grand Avenue, at that point, is 44 feet from east to west; that Independence Avenue, at the western edge of the intersection, is 36 feet wide and, at the eastern edge, is 46 feet wide; that the pedestrian walk across Grand Avenue is unmarked but is 12 feet wide, measured from the south curb line of Independence; that

Sandra's body lay at a point 12 feet east of the west curb line of Grand and 26 feet south of the south curb line of Independence; that defendant's automobile was sitting in the street, 30 feet south of the body; that defendant's automobile had "brush marks" on its right front "where it came in contact with the child"; that defendant told him that the front of his car was approximately 12 feet south of the south curb line of Independence at the point of impact and that he was traveling south on Grand, at a speed of 10 or 12 miles per hour, when the impact occurred. The officer stated that the automobile, a 1947 Studebaker, was in good mechanical condition, brakes good, windshield and glasses clean; that it was 15 feet long; that there were no traffic lights at the intersection, nor was there an officer directing traffic; that the weather was clear, the street dry and smooth.

Plaintiffs read into evidence a part of the testimony of defendant, from his deposition, wherein he stated that he was operating his automobile south on Grand, had cleared the Independence Avenue intersection and was proceeding slightly upgrade; that the front of his car was a little over a car's length south of the curb line when he felt a "thud"; that, before entering the intersection, he looked to the right and left and saw nothing coming; that nothing interfered with his vision; that he was proceeding at a speed of 12 to 14 miles per hour when he felt a "thud"; that, after seeing deceased, if he had seen her, he could have stopped his car, under conditions there existing, within a distance of "a foot or six inches," counting the time it would take to get his foot off of the gas and on the brakes; that he could have stopped within less than 10 feet, or less than 5 feet.

It was shown that, by an ordinance of Kansas City, motorists shall yield the right of way to pedestrians within any unmarked cross-walk at the end of a block, where traffic is not regulated by signals or a police officer.

Defendant testified to the effect that, as he drove south on Grand approaching the Independence intersection, he was about two car lengths behind a heavy sand truck, and was proceeding at a speed of 12 to 15 miles per hour; that before entering the intersection he looked to the right and left; that when he got about a car's length across the intersection he felt a little bump; that he thought he had hit a rock or a brick; that a man who was unloading chicken coops across the street, shouted to him and motioned for him to stop; that the man, (witness Dowse) said: "You just hit a little child"; that he got out of his car and saw the child lying in the street back of his car; that he watched police officers examine his car; that "they thought" the child was struck by the right front bumper at about the front wheel; that there was a car parked on the west side of the street, a little south of the intersection, and two cars ahead of it; that he stopped his car ahead of the first car, opposite the second one; that the child was lying about three feet from the car parked nearest the intersection.

Defendant also offered the testimony of Forrest Dowse, who was working about 25 feet south of the intersection, on the east side of Grand, when the accident occurred.

He testified, in direct, as follows: "I didn't see her until after she was hit"; that he did not see her after she started into the street; that she was out in the street about eight feet when struck; that he did not see whether she was walking or running; that she was about 10 feet south of the intersection when he first saw her; that when he first saw the car it was about 20 feet south of the intersection and the child was about one and one half car lengths behind it; that defendant was traveling at a speed of 25 miles per hour; that he did not actually see the impact; that the child fell to the street just as he looked. He was then asked by defendant's counsel if he saw the child "at all" before the impact, and he answered: "Yes I did. I saw her right just before he hit her"; that she was running; that she went south after the impact.

On cross-examination he stated that he actually saw her running; that she was

toddling, very slowly, much more slowly than the car was moving; that she had reached the west rail of the streetcar track before being struck.

In determining whether or not a submissible case was made we will accept plaintiffs' evidence as true, and consider it in the light most favorable to plaintiffs, unless it is entirely unreasonable or opposed to physical laws; and we will give them the benefit of every favorable inference arising from the evidence and reject all unfavorable inferences. DeLay v. Ward, Mo.App., 262 S.W.2d 626, 633.

The evidence is that defendant's automobile approached the unmarked cross-walk at a speed of 12 miles per hour; that there was nothing to prevent his seeing Sandra enter the cross-walk, or enter the street south of the cross-walk, if she entered the street and "toddled" diagonally into the cross-walk where she was struck. Mr. Dowse saw the car strike her when she was eight feet east of the west curb of Grand, and 10 feet south of the south curb line of Independence, (which is within the unmarked cross-walk). It is partially corroborated by what defendant told officer England. Dowse also stated that when Sandra was struck her body went to the southward. That is the positive testimony which the jury had before it.

In order for the child to have reached the point where she was struck, she traveled in the street, or cross-walk, a distance of at least eight feet, from the curb, at a speed of not to exceed six miles per hour or 8.8 feet per second. DeLay v. Ward, 262 S.W. 2d loc. cit. 635. When she entered the street defendant's automobile was, therefore, at least 17 feet north of the point where she was struck. Defendant is charged by law with having seen her enter the street, because nothing prevented him from seeing; and he was required to look. He says that, had he seen her, he could have stopped within a foot or six inches, certainly within five feet, after seeing her. Therefore, the jury could have believed that he saw, or could have seen, her enter the street, and run or toddle toward the point of impact, within sufficient time thereafter to have stopped without injury to himself or his automobile. A submissible humanitarian case was made. Banks v. Morris & Company, 302 Mo. 254, 257 S.W. 482; DeLay v. Ward, supra.

Defendant says that, under the evidence, Sandra may have come into the street from between the automobiles parked on the west side of Grand, south of the intersection. It is a far fetched theory. The first automobile parked on the west side of Grand, south of the intersection was, according to the testimony, about 30 feet south of the intersection. To have come from between it and the next car parked south of it, the little girl must have wandered down the street, to the north, at least 30 feet before she was struck; and during all of that time she would have been within plain view of defendant. Such a theory is wholly untenable, under the positive testimony of both Dowse and defendant; but if it is a tenable theory, plaintiffs still made a submissible case.

The judgment should be affirmed.

BOUR, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed.

All concur.