Willie David GRAHAM, a minor, by Sam Bodine, Guardian, Plaintiff-Respondent,

v.

Willis CONNER, Defendant-Appellant.

No. 8541.

Springfield Court of Appeals.

Missouri.

Jan. 30, 1967.

Motion for Rehearing or to Transfer Denied Feb. 24, 1967.

Powell, Jones & Ringer, Marvin E. Jones, Dexter, for defendant-appellant.

C. H. Parsons, Jr., Dexter, Briney, Welborn & Spain, Joe Welborn, Bloomfield, for plaintiff-respondent.

STONE, Presiding Judge.

For injuries allegedly sustained in a "no eyewitness" accident in the City of Dexter, Missouri, on the afternoon of Saturday, October 31, 1964, plaintiff, then four years of age, obtained a jury verdict for $10,000 against defendant. From the judgment entered thereupon, as subsequently reduced by remittitur to $7,000, defendant appeals.

Defendant's primary contention that plaintiff did not make a submissible case requires a detailed review of the evidence. The accident occurred in a residential area on Vine, an east-west street, in the block between Elm and Locust. A north-south alley, eleven feet six inches in width, intersects Vine near the center of that block, Elm being 191 feet east of the center line of the alley and Locust being 188 feet west of that center line. The traveled blacktop roadway on Vine is 20 feet in width. Along the *south* side of the roadway, there is a dirt parking space ten feet in width and, south of the parking space, first a concrete curb, next a "grassy area" or parkway six feet six inches in width, and then a paved sidewalk four feet in width. Along the *north* side of the roadway, there is a dirt parking space twelve feet six inches in width (with no curb or parkway) bounded on the north by a paved sidewalk. Much of this section of Vine is shaded by overhanging trees. In the *south parkway*, there is a venerable tree with very large trunk just *east* of the north-south alley, a row of thick bushes running *east* from that tree along the front of the first lot *east* of the alley, and another tree with somewhat smaller trunk a short distance *west* of the alley. In the *north parking space*, other large trees stand both *east* and *west* of the alley. Plaintiff Willie resided with his mother and stepfather (Chipman by name) in the first house west of the alley on the north side of Vine. The front of the Chipman house was fifteen feet north of the north sidewalk on Vine and the east end of that house was twenty feet west of the center line of the north-south alley.

Some thirty minutes prior to the accident, plaintiff's witness Nelson, a telephone repairman, parked the pickup truck used in his work, headed west, "approximately in front" of the Chipman house and "close" to the north sidewalk. His mission was to check "cable trouble in the alley." In Nelson's words, "from the time I arrived there the little boy [plaintiff] was out in the yard, right in front of [the Chipman] house, playing with a little red wagon . . . and he was up on my truck and I was getting him off the truck, and I started [south from Vine] down the alley there hunting for cable trouble." Using a "stick" or "rod" running on rollers along the overhead cable, Nelson located the trouble at a point in the alley "approximately a hundred feet . . that's just a guess" south of the south sidewalk on Vine. Plaintiff followed Nelson down the alley to the point of the cable trouble and was last seen (prior to the accident) at that point "approximately a hundred feet down there" south of the south sidewalk. Telling plaintiff "not to bother my equipment," Nelson returned to his parked truck "to get the tools out of the [north] side of the truck to fix the cable." He had no idea "how long it took" to walk back to the truck, but he "walked at the normal rate of speed."

While on the north side of his truck, Nelson first noticed defendant's 1960 Pontiac automobile westbound on Vine, then "approximately 100, 150 feet" east of him, and traveling (so he thought on direct examination) at "approximately ten, five to ten miles an hour" or (so he agreed on redirect examination) perhaps "faster than ten miles an hour."[1] Thereafter, Nelson did not watch, but remained aware of, defendant's approaching automobile— "from where I was standing, even out of the side of your eyes you can see a car coming down the street there." He thought that defendant had maintained about the same speed, but he declined to estimate the elapsed time between his initial sighting of defendant's automobile and the moment of accident. Defendant's course of travel was "on his own proper side of the street," i. e., on his right-hand (the north) side of Vine.

As we have noted, Nelson was on the north side of his parked truck; but, when

---

1. For appropriate observations concerning the force and effect of estimates of this character, see Davis v. St. Louis Public Service Co., Mo., 316 S.W.2d 494, 498(7).

asked "whether or not your view was obstructed of the traveled portion of the . . street," he replied, "no, I could see over the top of the truck." Nevertheless, he testified emphatically that, after leaving the point of cable trouble in the alley, he did not see plaintiff again prior to the accident, and that he did not see the accident itself. However, he "heard the thud" and, running around his truck, went to plaintiff lying on the blacktop "sort of doubled up" at a point located by him (Nelson) as in the center of the 20-foot blacktop roadway, "slightly ahead" or west of his parked pickup, and 50 to 60 feet west of the center line of the north-south alley. Defendant's automobile had stopped "just at an angle there . . . headed northwest."

Plaintiff's witness Capps, whose back yard abutted the north-south alley near the point of cable trouble (the north line of his lot was 106 feet south of the south sidewalk on Vine), had, while emptying trash in an alley receptacle, seen repairman Nelson and "a child . . . I suppose it was a boy" under the cable where Nelson was working. "Later, I don't know how many minutes it was . . . I left the alley and went back in the yard, and I heard a noise . . . it would be pretty hard to describe . . . well, I heard an impact of some kind . . I heard tires squealing, I also heard a thud, which come first I couldn't swear to it . . whose thud it was and whose tires it was, I don't know." Anyway, Capps "went to the direction of the noise . . . over on Vine Street" and found plaintiff lying "close to the center line of the street" at a point which was "west of the telephone truck." Capps' initial statement that, when he arrived at the scene of accident, defendant's automobile was standing "on the north side of the street, maybe a car length or a car length and a half beyond [west of] the boy" must be read in connection with his subsequent explanation and elaboration that "it was parked on the shoulder when I got there . . . somewhat north of where

the normal traffic lane is . . . he had pulled free of traffic."

The only other witness whose testimony in any wise pertained to the accident itself was plaintiff's witness Ruth Corlis who was "sitting there crocheting" in the house west of the Chipman house when (as she said at one point) "I heard a bump like" or (as she put it later) "I didn't hear anything any more than just the two cars that sounded like a thump or two cars maybe kind of bumped a little." When Miss Corlis arose and went to the window—"I didn't go out of the house"—she saw "two cars . . . standing there, one on the south side of [Vine] street and one on the north side, and a bunch of folks had got out of the cars and was standing there in the middle of the street," all of which prompted the witness to volunteer "I think it was a car wreck." There was no known eyewitness to the accident.

Plaintiff also introduced in evidence certain interrogatories propounded to defendant and his answers thereto. The substance of those answers was that no eastbound traffic on Vine had passed his automobile "immediately prior to the accident" and he was meeting no such "oncoming traffic at the time of the accident"; that nothing had obstructed his "vision of Vine Street just prior to the accident"; that he had not seen plaintiff prior to the accident and therefore had sounded no warning; and that "the point of impact" between his automobile and plaintiff had been "about ten feet west of the [north-south] alley."

After his motion for a directed verdict at the close of plaintiff's case was overruled, defendant offered no evidence. Whereupon, plaintiff submitted his case to the jury on a single assignment of primary negligence, i. e., that "defendant failed to keep a careful lookout." By that submission, plaintiff abandoned all other pleaded grounds of negligence [2] and, in determining

2. Burnett v. St. Louis Public Service Co., Mo., 337 S.W.2d 921, 923(1); Brooks v. Stewart, Mo., 335 S.W.2d 104, 105, 81 A.L.R.2d 508; Payne v. Smith, Mo., 322

the sufficiency of the evidence to make a prima facie case, we must confine ourselves to the sole ground submitted.[3] In that inquiry, we consider the evidence in the light most favorable to plaintiff and accord to him the benefit of all supporting inferences fairly and reasonably deducible from the evidence [Ornder v. Childers, Mo., 327 S.W. 2d 913, 915(1); Appelhans v. Goldman, Mo., 349 S.W.2d 204, 208(8)], tempered only by the wise, judicious limitation that this rule calls for consideration of all, not merely an isolated part or parts, of the facts shown by plaintiff and does not require the court to supply missing evidence, or to give plaintiff the benefit of forced or unreasonable inferences, or to disregard the dictates of common reason and accept that which, on the whole record, obviously is not true.[4]

Plaintiff's theory of submissibility is a concatenation of assumptions (in some particulars alternative and diverse), combined with precise mathematical calculations employing imprecise estimates or approximations of speeds, and colored with an occasional dash of inaccuracy. The basic assumption is that, immediately prior to the accident, plaintiff approached the course of defendant's automobile from the *south*. As developed in plaintiff's brief, counsel's theory of submissibility then encompasses and harnesses these further assumptions, to wit (1) that, as defendant's automobile moved west on Vine, plaintiff traveled thir-

ty feet six inches (i. e., four feet across the south sidewalk, six feet six inches across the south parkway, ten feet across the south parking space, and ten feet across the south half of the blacktop roadway) "within plain view of defendant"; (2) that plaintiff *walked* that distance at two to three miles per hour, i. e., at 2.9 to 4.4 feet per second, in *6.9 to 10.5 seconds* [Bunch v. Mueller, 365 Mo. 494, 284 S.W.2d 440, 443(4)], *or alternatively* that plaintiff *ran* that distance at four to six miles per hour, i. e., at 5.9 to 8.8 feet per second, in 3.5 to 5.2 seconds [DeLay v. Ward, 364 Mo. 431, 262 S.W.2d 628, 635; Burroughs v. Henn, Mo.App., 269 S.W.2d 900, 902];[5] (3) that, on the assumption that plaintiff had *walked*, during the aforesaid period of 6.9 to 10.5 seconds "defendant (at five miles per hour) traveled between 51.75 feet and 78.75 feet";[6] and (4) that "the jury could have found that defendant could have seen plaintiff *walking or running* toward the center of the street at a time when defendant was at least 78.75 feet from the point of injury." (All emphasis herein is ours.)

In support of their insistence that the evidence reasonably permitted an inference (basic to their theory of submissibility) that plaintiff approached defendant's automobile from the *south* but clearly forbade a contrary inference that he had approached it from the *north*, counsel present a two-pronged argument, to wit, (a) that, after repairman Nelson left the point of cable

S.W.2d 764, 767(1); Welch v. McNeely, Mo., 269 S.W.2d 871, 875(1); Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91, 93(1).

3. Evett v. Corbin, Mo., 305 S.W.2d 469, 471; Page v. Hamilton, Mo., 329 S.W.2d 758, 762(5); Herr v. Ruprecht, Mo., 331 S.W.2d 642, 647(2); Begley v. Connor, Mo., 361 S.W.2d 836, 839(4); Weathers v. Falstaff Brewing Corp., Mo.App., 403 S.W.2d 663, 666(5); Stevens v. Waldman, Mo.App., 375 S.W.2d 633, 637(1).

4. Kirks v. Waller, Mo., 341 S.W.2d 860, 863(3); Dillon v. Hogue, Mo.App., 381 S. W.2d 599, 600(1); Holland v. Lester, Mo. App., 363 S.W.2d 75, 80; Reames v. St.

Louis-San Francisco Ry. Co., Mo.App., 359 S.W.2d 230, 235(2).

5. In Vietmeier v. Voss, Mo., 246 S.W.2d 785, 788, our Supreme Court held that "[t]he jury could reasonably infer that even a five year old boy could run the short distance this plaintiff ran at a speed of ten miles per hour for a man will walk at from four to five miles per hour."

6. The quoted distances are approximate, not precise as they would suggest. At five miles per hour, defendant's automobile would have traveled 7.33 feet per second and, in the stated period of 6.9 to 10.5 seconds, between 50.58 and 76.97 feet.

trouble and started north in the alley, plaintiff could not have returned to the *north* side of Vine because, if he had done so, Nelson would have seen him, and (b) that the elapsed time was insufficient to have permitted plaintiff's return to the north side of the street prior to the accident.

Neither prong is persuasive. True, if plaintiff had overtaken and passed around Nelson *in the alley*, the latter no doubt would have noticed the boy. However, there is a house on the south side of Vine just west of the north-south alley; nothing in the record indicates that either the lot or the north-south alley is fenced; and, with the acts of a child four years of age being thoughtless, impulsive and "wholly unpredictable" [Vietmeier v. Voss, Mo., 246 S.W. 2d 785, 790; Ozbun v. Vance, Mo., 323 S.W. 2d 771, 775(3)], and with the accident occurring (so Nelson testified) 50 to 60 feet *west* of the center line of the alley and *west* of his parked pickup, the evidence reasonably would not have permitted any finding as to the specific route followed by plaintiff after he left the point of cable trouble. And with Nelson actively engaged in the performance of his work and charged with no duty to control plaintiff or to track his movements, counsel are in poor position to urge that Nelson's failure to see plaintiff on the *north* side of Vine established that he had not crossed to that side of the street prior to the accident, particularly so in view of the further fact that Nelson likewise did not see plaintiff on the *south* side of Vine or so much as catch a glimpse of plaintiff out of the corner of his (Nelson's) eye, even though in that wise he did see defendant's automobile "all the way up the street" and formed an opinion that it maintained about the same speed to the point of accident, and even though, when asked "whether or not your view was obstructed of the traveled portion of the . . . street," he stated positively, "no, I could see over the top of the truck."

The argument of plaintiff's counsel as to elapsed time runs along this line. "The total distance traveled by Nelson" from the point of cable trouble to the north side of his parked pickup on Vine, so they categorically declare, "was 151 feet" (including "approximately a hundred feet . . . that's just a guess" in the alley, four feet across the south sidewalk, six feet six inches across the south parkway, ten feet across the south parking space, twenty feet across the blacktop roadway, and an arbitrary allowance of only *ten feet six inches* from the north side of the blacktop to the tool chest on the north side of his pickup which was parked "close" to the north sidewalk *twelve feet six inches* north of the blacktop and "approximately in front" of the Chipman house, the *east end* of which was *twenty feet* west of the center line of the alley). Confidently proceeding to precise mathematical computations employing not only the imprecise estimate that Nelson walked at a speed of two to three miles per hour, i. e., at 2.9 to 4.4 feet per second [DeLay v. Ward, supra, 262 S.W.2d at 635(9); Perry v. Dever, Mo., 303 S.W.2d 1, 5(3)] but also the inaccurate and insufficient assumption that he traveled only 151 feet, counsel explicitly conclude that it required "between 34.3 seconds and 52.1 seconds" for Nelson to walk from the point of cable trouble to the north side of his pickup.

Turning to defendant's westbound automobile, counsel say that "the jury could have found that defendant traveled a distance of 150 feet at five miles per hour" and, perhaps wearying (as we are) of these repeated exercises in the dissection of seconds, momentarily lapse into inexactitude with the estimate that "this would take . . 20 seconds." Then, in a continuing effort to minimize the period immediately prior to the accident during which plaintiff's movements were wholly unaccounted for, counsel assert that this 20 seconds was "consumed . . . either just before or at the time Nelson got to his truck," offering in support of this conclusion one segment of a long narrative statement by Nelson to the

effect that he had walked around the pickup to get tools "out of the side of the truck . . . and in the meantime I saw Willis [defendant] coming down the street." But, taking Nelson's testimony as a whole, as we must do,[7] it is clear that this additional period approximated by counsel at 20 seconds began *after* Nelson had reached the north side of his parked pickup and had been there an undisclosed (although presumably brief) period of time. For, when specifically asked "where you were at the first time you noticed [defendant's] car," Nelson answered in plain and unambiguous language, "I was on the north side of my truck"; and, it will be remembered that thereafter Nelson saw the automobile out of the corner of his eye "all the way up the street."[8] In summary, we think the conclusion inescapable that the evidence neither compelled an inference that plaintiff approached the course of defendant's automobile from the south nor forbade an inference that he approached it from the *north*, and that any finding on this basic factual issue would have rested on nothing more than sheer speculation and shimmering surmise.

*If* plaintiff did approach from the south side of Vine, the evidence would not have required or supported a finding, in accordance with the assumption in his brief, that he (plaintiff) traveled thirty feet six inches, i. e., from the south edge of the south sidewalk on Vine to the center of the blacktop roadway, "within plain view of defendant." This for the reason that, as counsel quickly conceded in oral argument, no inference properly could have been drawn as to the point at which plaintiff crossed the south sidewalk or parkway and at certain points the trunks of large trees

would have hidden him or interfered with his discovery until he reached the south curb. Of course, as counsel hastened to point out, the south curb is 20 feet from the center of the blacktop roadway where plaintiff was lying after the accident and, if plaintiff had approached from the *south*, he would have been in plain sight while moving from the curb to the point of accident. However, if plaintiff had entered the roadway from the *north* at a point about even with that where he was lying after the accident, i. e., "slightly ahead" or west of Nelson's parked pickup, he would have been visible to defendant while he (plaintiff) was moving a shorter distance not capable of precise ascertainment on the transcript before us.

In this connection, it should be emphasized that there was no evidence as to whether defendant's automobile had been examined after the accident in an effort to determine what part thereof had come in contact with plaintiff or, if such examination had been made, what it revealed. As a result of the accident, plaintiff suffered a "moderate to moderately severe concussion" resulting in hospitalization for sixteen days. But there was no fracture, the only marks on plaintiff were an abraded and bruised area on the left side of his head and a bruised area "on his left flank," and there was no indication that defendant's automobile had run over plaintiff.

The submitted assignment of negligence was that "defendant failed to keep a careful lookout." To support their contention that a submissible case was made thereon, plaintiff's counsel direct us to some of the Missouri cases stating certain familiar principles, to wit, that the continuous and

7. Dimond v. Terminal R.R. Ass'n. of St. Louis, 346 Mo. 333, 353, 141 S.W.2d 789, 799(12); Cotton v. Voss Truck Lines, Inc., Mo.App., 392 S.W.2d 428, 433(4); Haire v. Stagner, Mo.App., 356 S.W.2d 305, 310(6); Dugan v. Rippee, Mo.App., 278 S.W.2d 812, 816(7).

8. See Batson v. Ormsbee, Mo.App., 304 S.W.2d 680, 682; Hoffman v. Illinois Terminal R. Co., Mo.App., 274 S.W.2d 591, 593(1); Carrow v. Terminal R. Ass'n. of St. Louis, Mo.App., 267 S.W. 2d 373, 379(8); Garrard v. State Dept. of Public Health & Welfare, Mo.App., 375 S.W.2d 582, 592(25).

inescapable duty to maintain a vigilant lookout ahead and laterally ahead rested upon defendant;[9] that, to satisfy and discharge that duty, he was required to look in such observant manner as to enable him to see what one in the exercise of the highest degree of care for the safety of himself and others could and should have seen under similar circumstances;[10] that such duty imposed the obligation (in the language of the brief) "to observe plaintiff beyond the traveled portion of the road," excepting (as we add) insofar as defendant's observation was obstructed;[11] that, having been charged with the duty so to look, "he must be held to have seen what looking would have revealed";[12] and that his failure to see that which was plainly visible would have constituted negligence [Schmidt v. Allen, Mo., 303 S.W.2d 652, 657(5); Anthony v. Morrow, Mo.App., 306 S.W.2d 581, 586], as much so as if he had not looked at all.[13]

■ *Assuming (without, however, so deciding)* that the meager circumstantial

evidence would have permitted an inference that, in the exercise of the highest degree of care, defendant could and should have seen plaintiff *at some time and place* prior to the accident, it might have been found that defendant was negligent in failing to maintain the required lookout. But that, in and of itself, would not have given rise to a cause of action, for there is a clear distinction between *negligence* "in its colloquial meaning," i. e., the want of the required degree of care, and *actionable negligence*. Cameron v. Small, Mo., 182 S.W.2d 565, 568(5); Kenward v. Hultz, Mo.App., 371 S.W.2d 344, 349. "'It is an elementary principle of the law of torts that there can be no actionable negligence in the absence of the existence of some duty on the defendant's part owing to the plaintiff, which duty has been neglected or violated by the defendant, with the injury suffered by the plaintiff directly attributable thereto, and flowing therefrom.'"[14] Otherwise stated, "[i]n order to impose liability there must not only be a lack of care, but such lack of care must involve a

9. Stradford v. Bluefeather, Mo., 384 S.W. 2d 541, 543(3); Thaller v. Skinner & Kennedy Co., Mo., 315 S.W.2d 124, 129 (4); Faught v. Washam, 365 Mo. 1021, 291 S.W.2d 78, 82(4); Weathers v. Falstaff Brewing Corp., supra note 3, 403 S.W.2d at 667(6); Davis v. Hilton, Mo. App., 366 S.W.2d 501, 505(2).

10. Braun v. Hoffmeister, Mo., 366 S.W.2d 406, 408(3); Chenoweth v. McBurney, 359 Mo. 890, 224 S.W.2d 114, 118(8); Immekus v. Quigg, Mo.App., 406 S.W.2d 298, 301(4); Leek v. Dillard, Mo.App., 304 S.W.2d 60, 67(15).

11. Williams v. Ricklemann, Mo., 292 S.W. 2d 276, 281(6); Scaggs v. Uetrecht, Mo., 244 S.W.2d 17, 20; Wright v. Osborn, 356 Mo. 382, 201 S.W.2d 935, 938(4); Lee v. Holland, Mo.App., 258 S.W.2d 30, 34 (5-7).

12. Smith v. Kansas City Public Service Co., 328 Mo. 979, 991, 43 S.W.2d 548, 553(7); Weis v. Melvin, Mo., 219 S.W.2d 310, 311(4); Frandeka v. St. Louis Public Service Co., Mo., 234 S.W.2d 540, 546 (5); Combellick v. Rooks, Mo. (banc), 401 S.W.2d 460, 463(2); Hinrichs v. Young, Mo., 403 S.W.2d 642, 645(2).

13. Burnett v. St. Louis Public Service Co., Mo., 337 S.W.2d 921, 926(11); Bracken v. Koch, Mo.App., 404 S.W.2d 201, 204; See v. Kelly, Mo.App., 363 S.W.2d 213, 216; James v. Berry, Mo.App., 301 S.W. 2d 530, 533(6).

14. Reichholdt v. Union Electric Co., Mo., 329 S.W.2d 634, 637; Hiltner v. Kansas City, Mo., 293 S.W.2d 422, 427(7); Kenward v. Hultz, Mo.App., 371 S.W.2d 344, 349; Capobianco v. Yacovelli Restaurant, Inc., Mo.App., 360 S.W.2d 302, 305(1); Lanham v. St. Louis Public Service Co., Mo.App., 360 S.W.2d 243, 245(3); Meyer v. St. Louis Public Service Co., 241 Mo. App. 1057, 253 S.W.2d 525, 528(3); Bauer v. Wood, 236 Mo.App. 266, 154 S. W.2d 356, 358(4); Vairo v. Vairo, Mo. App., 99 S.W.2d 113, 115(1). See Consumers Cooperative Ass'n. v. McMahan, Mo., 393 S.W.2d 552, 555(1); Atcheson v. Braniff International Airways, Mo., 327 S.W.2d 112, 117(8); Schaefer v. Accardi, Mo., 315 S.W.2d 230, 233(6); Biscoe v. Kowalski, Mo., 290 S.W.2d 133, 138(5); Wise v. Towse, Mo.App., 366 S. W.2d 506, 510; Gass v. Knittig, Mo.App., 396 S.W.2d 26, 28(2).

breach of some duty owed to another under the particular circumstances existing at the time of the act or omission complained of, which act or omission must have proximately resulted in such other person's injury." Kelley v. National Lead Co., 240 Mo.App. 47, 210 S.W.2d 728, 734(8); Gutknecht v. Wagner Bros. Moving & Storage Co., Mo.App., 266 S.W.2d 19, 23. In this connection, see particularly Bowers v. Columbia Terminals Co., Mo.App., 213 S.W.2d 663, 668(5).

■ Failure to keep a vigilant lookout, negligent though it may be, is not actionable and submissible in the absence of substantial evidence from which the triers of the facts reasonably may find that, in the exercise of the highest degree of care, defendant could and should have seen plaintiff *in time thereafter to have taken effective precautionary action.*[15] Thus the court pointed out in Thomas v. Wade, Mo. (banc), 361 S.W.2d 671, 674, a suit for injuries sustained by plaintiff twenty-three months of age who ran from a sidewalk into the side of defendant's moving automobile, a submission for negligent failure to keep a vigilant lookout, at least in a situation where the injured person was not directly in the path of the vehicle when the duty to see first arose, "actually submits failure to see *and* failure to avoid injury by 'any means supported by the evidence.' Moore v. Ready Mixed Concrete Co., supra [Mo., 329 S.W.2d 14, 25]."

■ This brings us to the question posed and answered in this fashion in Thomas v. Wade, supra, 361 S.W.2d at 674: "[W]hen does the duty to act arise? It is not necessarily at the exact time there was a duty to see. Under the facts of this case, if the duty to see *and* the duty to act arose at the precise time, then under plaintiff's theory every motorist driving on

a city street would have to slow, stop, warn, or slacken his speed every time he saw or should have seen a child or elderly person, or possibly any person, on the sidewalk even though not approaching the street or the path of the vehicle. While it may be stated in various ways . . . the duty to act when one does or should see arises at the time that a person, in the exercise of the highest degree of care, knew or should have known that there was danger, that is, a likelihood of injury. See the discussion of this issue in Nydegger v. Mason, Mo., 315 S.W.2d 816, 819. In the case of a child, that danger or likelihood of injury might well be at the time the child turned toward the street, or possibly even before that time *depending upon all the circumstances.*"

■ It is true that motorists are charged with recognition that a child of tender years, "being engaged in play or other preoccupations on or near a roadway is almost entirely devoid of an appreciation of danger" [Ozbun v. Vance, Mo., 323 S.W.2d 771, 775–776] and that "[t]houghtless and impulsive acts of children are to be expected and guarded against." Schmidt v. Allen, supra, 303 S.W.2d at 659. See Wood v. Claussen, Mo.App., 207 S.W.2d 802, 808(2); annotation 30 A.L.R.2d 5, 32–35, 75, 105, But obviously the precautionary and evasive action required of a motorist in any given situation must depend upon the circumstances with which he is confronted and must be "commensurate to the danger potential in such a situation." Ozbun v. Vance, supra, 323 S.W.2d at 775. In the case at bar, there was no substantial evidence from which the triers of the facts fairly and reasonably could have found what situation confronted defendant as he approached the point of accident. For example, no inference could have been drawn and no finding could have been made, other than by forbidden resort to unbridled

15. Zalle v. Underwood, Mo., 372 S.W.2d 98, 102(3); O'Neill v. Claypool, Mo., 341 S. W.2d 129, 135(11); Immekus v. Quigg, supra note 10, 406 S.W.2d at 301. See

Nydegger v. Mason, Mo., 315 S.W.2d 816, 819; Bischoff v. Dodson, Mo.App., 405 S.W.2d 514, 518.

conjecture, rank surmise and palpable guesswork, (a) as to whether plaintiff approached the path of defendant's automobile from the north or from the south, (b) as to where plaintiff was when he first could and should have been seen by defendant, (c) as to the relative positions of plaintiff and defendant's automobile at that time, (d) as to what direction plaintiff then was looking, (e) as to whether plaintiff then was running, walking or standing still, (f) as to the course he thereafter followed to the point of accident, (g) as to whether he thereafter moved the entire distance to the point of accident (unknown and undeterminable upon the record) uninterruptedly and at the same rate of speed, (h) as to the precise location of the point of accident, or (i) as to whether defendant's automobile ran into plaintiff or plaintiff ran into the automobile [Vietmeier v. Voss, Mo., 246 S.W.2d 785; Thomas v. Wade, Mo. (banc), 361 S.W.2d 671] and, if the latter, what part of the automobile he contacted.

 In attempting to piece out plaintiff's case, his counsel argue that, since defendant did not testify, plaintiff was "entitled to a presumption that . . . his [defendant's] testimony would have been unfavorable and damaging." The law on this subject is that, "where matters charged against a party are peculiarly within the knowledge of the party charged, the failure of such party to appear and testify at the trial carries with it an unfavorable and damaging presumption (Parish v. Casner [Mo.Sup.] 282 S.W. 392, 412), but this rule of law has no application to a case where the party upon whom the burden of proof rests fails to make out a case.

No duty rests upon the party charged to speak until the other party has introduced evidence which, unexplained, makes a case against him." [16] Of course, the burden of proof as to each essential element of plaintiff's case rested upon him [Vietmeier v. Voss, supra, 246 S.W.2d at 787(1)] and did not shift by reason of the fact that plaintiff was a boy four years of age while defendant was an adult. Vietmeier v. Voss, supra, 246 S.W.2d at 789(9); Harris v. Lane, Mo. App., 379 S.W.2d 635, 639(7), app. to transfer denied by Mo.Sup., No. 50942. With instant defendant standing on his motion for a directed verdict at the close of plaintiff's evidence, clearly plaintiff is not entitled to the aid of any presumption in this inquiry as to the submissibility of his case.

 A "case is not to be submitted unless each and every fact essential to liability is predicated upon legal and substantial evidence. Neither may any fact essential to submissibility be inferred in the absence of substantial evidentiary basis. In other words, liability cannot rest upon guesswork, conjecture or speculation beyond inferences reasonably to be drawn from the evidence. Willey v. Fyrogas Company, 363 Mo. 406, 251 S.W.2d 635, 642; Brawley v. Esterly, Mo., 267 S.W.2d 655, 659; Quinn v. St. Louis Public Service Co., Mo., 318 S.W.2d 316, 323; 32 C.J.S. Evidence § 1042, p. 1116 [now 32A C.J.S. Evidence § 1042, p. 797]. The question of whether the evidence in a given case is substantial is one of law for the court. Vietmeier v. Voss, Mo., 246 S.W.2d 785, 787–788; Tharp v. Monsees, Mo., 327 S.W.2d 889, 899." Probst v. Seyer, Mo., 353 S.W.2d 798, 802(2, 3), 91 A.L.R.2d 1252; Gibson v. Newhouse, Mo., 402 S.W.2d 324, 327–328(6–9).

16. Bahl v. Miles, 222 Mo.App. 984, 6 S.W. 2d 661, 664(8, 9); Shidloski v. New York, C. & St. L. R. Co., 333 Mo. 1134, 64 S.W. 2d 259, 264(4, 5); Rissell v. St. Louis-San Francisco Ry. Co., 336 Mo. 845, 81 S.W.2d 621, 623(4). See Tilton v. Woods, Mo., 371 S.W.2d 291, 297(3); Talley v. Richart, 353 Mo. 912, 185 S.W.2d 23, 27 (9, 11); Russell v. Franks, 343 Mo. 159, 120 S.W.2d 37, 40(3); Frohman v. Lowenstein, 303 Mo. 339, 260 S.W. 460, 466 (8, 9); Hogue v. Wurdack, Mo.App., 298 S.W.2d 492, 500(18); 2 Wigmore on Evidence (3rd Ed.), § 290, l. c. 179; 31A C.J.S. Evidence § 156(1), l. c. 396; Id., § 156(4), l. c. 424.

■ We find the conclusion inescapable that the lean circumstantial evidence in the instant case would not reasonably have permitted a finding by the jury upon the first essential element of plaintiff's cause of action, i. e., "some duty on the defendant's part owing to the plaintiff, which duty has been neglected or violated by the defendant" [see cases cited marginally in note 14] or, otherwise phrased, "a breach of some duty owed to [plaintiff] under the particular circumstances existing at the time of the act or omission complained of." Kelley v. National Lead Co., supra, 240 Mo.App. at 59, 210 S.W.2d at 734.

■ The record compels (so we are convinced) the same conclusion with respect to submissibility of the essential element of "causation." Biscoe v. Kowalski, Mo., 290 S.W.2d 133, 138(6); Schaefer v. Accardi, Mo., 315 S.W.2d 230, 233. As with the first element, plaintiff assumed the burden [Osterhaus v. Gladstone Hotel Corp., Mo., 344 S.W.2d 91, 94(4); Prosser on Torts (2nd Ed.), § 44, 1.c. 222] of showing a causal connection between the negligence submitted and the injury sustained, such that the injury would not have happened but for the negligence.[17] We recognize that, as plaintiff's counsel emphasize, causal connection need not be established by direct and positive evidence but may be shown by proof of facts and circumstances from which such connection reasonably may be inferred. Cluck v. Snodgrass, Mo.App., 381 S.W.2d 544, 548(2); Leek v. Dillard, Mo.App., 304 S.W.2d 60, 65(10). On the other hand, if (as we are constrained to believe) the evidence left the element of causal connection in the nebulous twilight of speculation, conjecture and surmise, plaintiff did not carry his burden and the judgment for him cannot stand.[18]

Plaintiff leans heavily on our case of Hildreth v. Key, Mo.App., 341 S.W.2d 601, in which (1) there was *testimony* (a) that plaintiffs' son "had 'started home' [from the east side of the street] to his grandmother's residence on the west side" and, when last seen prior to the fatal occurrence, was " 'playing with his yo-yo' and . . . walking in a westerly direction toward the roadway" [341 S.W.2d at 607] and was then " 'in the middle' of the walkway" over the shallow drainage ditch on the east side of the road, "five to eight feet from the point of accident and . . . within four or five seconds of the tragedy" [341 S.W. 2d at 606] and (b) that "subsequent inspection of defendant's [northbound] automobile revealed a dent in the right front fender just above and inside the right headlight" [341 S.W.2d at 604], and (2) all interested counsel agreed that the submissibility of plaintiffs' case depended upon the above *testimony* establishing the boy's direction of travel and placing him, in both distance and time, in close proximity to the accident. Hildreth v. Key, supra, does not support instant plaintiff's contention of submissibility. Although no two situations are molded in precisely the same factual image, our case is much closer to Bowers v. Columbia Terminals Co., Mo.App., 213 S.W.2d 663, where it was held that plaintiffs did not make a submissible case on alleged primary negligence for failure to keep a vigilant lookout. Consult also Hartlage v. Halloran, Mo.App., 331 S.W.2d 197, 200(4), app. to transfer denied by Mo.Sup., No. 48168; Harris v. Lane, Mo.App., 379 S.W.

17. Branstetter v. Gerdeman, 364 Mo. 1230, 274 S.W.2d 240, 245(2); Donnelly v. Goforth, Mo., 284 S.W.2d 462, 466(9, 10); Springer v. Security Nat. Bank Savings & Trust Co., Mo., 175 S.W.2d 797, 800 (5, 7); Annin v. Jackson, 340 Mo. 331, 100 S.W.2d 872, 876(2); State ex rel. Boeving v. Cox, 310 Mo. 367, 276 S.W. 869, 871.

18. Gibson v. Newhouse, Mo., 402 S.W.2d 324, 328–329; James v. Sunshine Biscuits, Inc., Mo., 402 S.W.2d 364, 375(2); Osborn v. McBride, Mo., 400 S.W.2d 185, 188(3); Rose v. Thompson, 346 Mo. 395, 141 S.W.2d 824, 829; Schabbing v. Seabaugh, Mo.App., 395 S.W.2d 256, 259(7), 260(9); Bauman v. Conrad, Mo.App., 342 S.W.2d 284, 288–289(7); Blythe v. United Rys. Co. of St. Louis, Mo.App., 211 S.W. 695, 697(3).

2d 635; Joplin v. Franz, Mo.App., 240 S.W.2d 209. Without resifting the evidence, we reiterate our conclusion that instant plaintiff did not make a submissible case on the essential element of causal connection. See again Bowers v. Columbia Terminals Co., supra, 213 S.W.2d at 670 (6–10, 12).

■ Plaintiff's counsel, known to us as diligent and dedicated practitioners, upon oral argument frankly conceded their inability to locate any eyewitness to the accident or to develop any material and relevant information in addition to that reflected in the transcript before us. Although defendant was not called as a witness, the nature and extent of his knowledge were probed and disclosed by that method of pretrial discovery selected by capable counsel, i. e., by numerous interrogatories and answers thereto (at least twenty-three in number), of which six were offered and received in evidence. V.A.M.R. Rule 56.01. No pleaded theory, on which plaintiff might make a submissible case with the witnesses and evidence available, is suggested or apparent. (See our recent discussion of this subject, per Titus, J., in Grissom v. Handley, Mo.App., 410 S.W.2d 681) In these circumstances, it becomes our plain duty to dispose of the case finally [V.A.M.R. Rule 83.13(c); V.A.M.S. § 512.160(3)], as has been done frequently in similar situations. Bowers v. Columbia Terminals Co., supra, 213 S.W.2d at 672; Hartlage v. Halloran, supra, 311 S.W.2d at 201; Harris v. Lane, supra, 379 S.W.2d at 639; Joplin v. Franz, supra, 240 S.W.2d at 211. See Williams v. Cavender, Mo., 378 S.W.2d 537, 544; Haire v. Stagner, Mo.App., 356 S.W.2d 305, 311(8), and cases there cited; Shofler v. Jordan, Mo.App., 284 S.W.2d 612, 616 (9, 10); Lowes v. Union Electric Co., Mo. App., 405 S.W.2d 506, 512.

The judgment for plaintiff is reversed.

HOGAN, and TITUS, JJ., concur.